Butler, J.
The defendant, Rafael Cruz, was indicted for armed robbery (01-0152-001), two counts of assault with a dangerous weapon (01-0152-002 and 01-0152-003), larceny (01-0152-004), and shoplifting (01-0152-005 and 01-0152-006). He was tried before a jury commencing March 18, 2002, and continuing until March 21, 2002, when the jury returned verdicts of guilty of the lesser included offense of unarmed robbery, of the two assault with a dangerous weapon charges, and of larceny. The commonwealth nol prossed the shoplifting charge on March 21, 2002.
The defendant timely filed a motion for judgment notwithstanding the verdict pursuant to rule 25(b)(2). A hearing was held thereon on April 10, 2002, at the same time as the sentencing. The court allowed the motion for judgment notwithstanding the verdict on the unarmed robbery charge, dismissed the larceny charge, and sentenced the defendant to two and a half years in the house of correction on one of the assault with a dangerous weapon convictions, probation from and after on the other assault with a dangerous weapon conviction. Having indicated from the bench that I would file written findings and rulings on the allowance of the motion for required finding of not guilty after a verdict, I do so now.
FACTUAL BACKGROUND
The evidence, in the light most favorable to the Commonwealth, was as follows.
Filene’s loss prevention associate James Peters was on duty on January 27, 2000, watching store monitors when he noticed a young man, later identified as the defendant, Rafael Cruz, in the men’s department. Cruz was accompanied by a younger male. Although in his early twenties himself, Peters was an experienced store detective. He kept watch through the monitors, and recorded the movements of the two men as they walked through the store, examining clothing. At one point, Cruz asked a question of a store employee who directed him to another department; the Nautica/Polo area. In that department, Cruz and the other young man (who was Cruz’ teenage cousin, Jason Aparicio), continued to examine, pick up and replace articles of clothing. No other shoppers or employees were seen on the monitor in this area.
Eventually, Cruz walked quickly to a shelf, grabbed several pairs of folded pants, and walked into the fitting area. He was out of camera range for approximately six minutes. The camera continued to watch the entrance to the fitting room. Jason remained in the store area, looking at clothing. Before Cruz re-appeared on screen, another man exited from the fitting area with a pair of pants, which he hung up on a rack. A couple of minutes later, Cruz emerged from the fitting room, returned to the shelf, and placed pants on the shelf. He and Jason left the area, and took an escalator to the second floor. They walked out of the store.
Peters suspected that Cruz had secreted a pair of pants under his own trousers, which were baggy and long. In Peters’ opinion, Cruz walked differently as he emerged from the fitting room, and his pants appeared bulkier than before.[1] Peters also believed that the stack of clothing Cruz carried out of the fitting area was smaller than the stack he carried in. Peters left the monitor room, and, checking one of the three fitting rooms, found a Nautica product tag with a $68.00 price on the floor. Taking the tag with him, he checked the pants he believed had been returned by Cruz, and found two broken plastic sensor tags in one of the pants’ pockets.
Peters decided to try to apprehend Cruz and ask him to return to the security office. To that end, he requested the assistance of another loss prevention associate, Blais Lalli. Lalli also was young, but was experienced in both commercial and military security. Peters and Lalli followed Cruz and Jason, and caught up with them inside the mall, about two hundred yards from the Filene’s interior entrance.
*470 According to Filene’s security procedures, loss prevention associates were to use reasonable judgment in apprehending suspected shoplifters. They were not to pursue suspects “(i) beyond the adjacent sidewalk, curb area of the store, or beyond the immediate vicinity of a mall exit (i.e. not beyond approximately 30 feet); or (ii) if suspects attempt to enter a vehicle or another store.”
When Peters and Lalli approached Cruz, they announced, in a conversational tone, that they were Filene’s security, and asked the young men to return with them to Filene’s. Neither Peters nor Lalli, who were in casual street clothes and who looked like any other young mall denizens, took out or displayed their Filene’s identification badges to Cruz. Cruz turned and took a few steps with Peters and Lalli, but suddenly turned again, and bolted for a mall exit. Peters and Lalli pursued him. At the double doors leading from the mall into the garage, Cruz slipped through, and pushed the door back onto Lalli, injuring Lalli somewhat. Cruz ran through the garage, at one point jumping on a low wall, but coming off it when he saw the long drop on the other side. Peters and Lalli grabbed Cruz and threw him down to the floor. Lalli tried to handcuff him as Peters held him down by force. Cruz yelled “Help me, help me” to a young male passerby who was drawn to the commotion, but who took no part in the incident. By all accounts, neither Lalli nor Peters said they were Filene’s security after the initial encounter inside the mall.
Cruz broke free of Lalli and Peters, and managed to reach a car belonging to an acquaintance, Ana Goncalves. Cruz and his cousin had come with her to the mall a short while earlier. Ms. Goncalves had left Cruz and his cousin in the car while she went inside the mall to buy some takeout food at the food court. She left the keys with Cruz. Now, using the keys’ remote feature, Cruz unlocked the car and jumped in the back seat, with Lalli and Peters close behind.
At this point, Filene’s procedures stated, no further pursuit was to be attempted.[2] However, Lalli continued to try to catch Cruz. He pulled on Cruz’ shirt and legs to drag him out of the car. As he did so, Cruz scrambled towards the front seat and yelled, “Let me go, I’ve got a gun! I’m going to shoot you!” (Or, “I’m going to get the gun!”) Cruz was never observed holding anything in his hands. No one ever saw a gun or other weapon.[3] Lalli persisted for a few seconds, but not for long. Afraid that Cruz would reach for a gun, Lalli and Peters broke off from Cruz, and stood and watched as Cruz sped off in Goncalves’ car.[4]
Ana Goncalves was also in the garage, holding take-out food, as Cruz drove away. She had witnessed most of the incident in the garage, and only now was told by Lalli and Peters that they were Filene’s security.
The Filene’s monitor established that Cruz was in the fitting room from approximately 8:28 to 8:34 p.m. According to Peters and Lalli, the incident was over by 9 p.m. at the latest. The Braintree police were dispatched to Filene’s at 9:44 p.m. The Nautica tag, the broken sensor tags, and Cruz’ jacket were not to be found by the time of trial, and were not produced. There were no photographs of any of the items.
Cruz was indicted for armed robbery of Lalli and Peters, larceny under $250, assault with a dangerous weapon on Lalli and Peters, and two separate counts of shoplifting. After a four-day trial, a jury convicted Cruz of unarmed robbery,[5] larceny, and assault with a dangerous weapon. The Commonwealth nol prossed the two shoplifting charges before the case went to the jury.
The matter is now before the court on the defendant’s motion for a required finding of not guilty.
DISCUSSION
1. DIRECTING OF REQUIRED FINDING OF NOT GUILTY ON INDICTMENT #0152-01 ON WHICH THE JURY FOUND THE DEFENDANT GUILTY OF THE LESSER INCLUDED OFFENSE OF UNARMED ROBBERY
In deciding a post-trial motion for a required finding of not guilty filed pursuant to Mass .R. Crim. P. 25(b)(2), the court does not exercise discretion concerning the weight or integrity of the evidence. Commonwealth v. Washington, 50 Mass.App.Ct. 167, 169(2000). Instead, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, the court must test the legal sufficiency of the evidence, as enunciated in Commonwealth v. Lattimore, 378 Mass. 671, 678 (1978). Thus, the question is “whether . .. any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. See also, Commonwealth v. Duette, 408 Mass. 454, 456 (1990).
The defendant was charged and convicted of robbery. The Commonwealth was bound to prove robbery. As was quoted in Commonwealth v. Salemme, "The Due Process Clause of the Fourteenth Amendment ‘protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.’ ” 395 Mass. 594, 602, (1985) (citations omitted).
“Robbery is defined as the felonious taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with the intent to steal.” Nolan, and Sartorio, Criminal Law, 32 M.P.S 281, 3rd Edition (2001). To prove robbery, the Commonwealth must prove beyond a reasonable doubt that the defendant: (1) stole or took personal property of another (2) by force and violence, or by assault and putting in fear. Commonwealth v. Christian, 430 Mass. 552, 556 (2000). Armed robbery requires the additional element of the defendant being armed. Id.
*471 It was stated in 1810, “a larceny committed with actual force and violence, or with a constructive force by any assault and putting in fear, is to be adjudged a robbery ...” Commonwealth v. Humphries, 7 Mass. 242, 244. (1810). Or, as stated in the case which cited Humphries, “The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property of any value whatsoever, with the intention of stealing it, from the protection which the person of that other affords.” Commonwealth v. Weiner, 255 Mass. 506, 509 (1926). “The fundamental distinction between unarmed robbery and the lesser included offense of larceny from the person is the use or threat of force. Commonwealth v. Jones, 362 Mass. 83,86(1972).” Commonwealth v. Glawacki, 398 Mass. 507, 514 (1986).
The danger of violence and resulting injury is that which distinguishes a robbery from a larceny (or even a larceny from the person), and it is reflected in the respective maximum penalties: up to life in prison for any robbery, G.L.c. 265, §§17 and 19(b); up to five years in prison for larceny from the person, G.L.c. 266, §25; and up to one year in the house of correction for a larceny of goods valued less than $250, G.L.c. 266, §30.
In sum, “assault and a larceny are essential elements of the crime of robbery. A charge of robbery cannot be sustained if there is no evidence of violence, actual or constructive, exerted upon the one on whose person or in whose presence the goods are.” Commonwealth v. Mahoney, 331 Mass. 510, 513 (1954). This is understood to include the common law concept of taking in a victim’s presence, and this in turn is read to cover cases where the victim could have prevented the taking, had he not been intimidated. See, Commonwealth v. Stewart, 365 Mass. 99, 108 (1974), Commonwealth v. Homer, 235 Mass. 526, 533 (1920) (“. . . it was not necessaiy, in order to establish the crime of robbery, to prove that the property was taken from the person of the owner. It was enough if it was in her protection or control, and that by violence of putting in fear, she was compelled to surrender it”).
The notion of what constitutes a robbery includes a variety of scenarios. Thus, an indictment for robbery is sufficient so long as the victim named in the indictment had some protective concern for the property taken, and the property was taken from the victim’s person or presence. See, for example, Commonwealth v. Stewart, 365 Mass. 99, 108 (1974), and Commonwealth v. Rajotte, 23 Mass.App.Ct. 93, 95-96 (1986); Commonwealth v. Grassa, 42 Mass.App.Ct. 204 (1997). It has also been held that a larceny may be converted into a robbery where the assault is committed on someone with a protective concern for the goods taken and who interfered with the completion of the theft. Commonwealth v. Mavredakis, 430 Mass. 848, 855 (2000) (“In effect, what began as a breaking and entering and a larceny was converted into an armed robbery once the victim arrived on the scene," during the course of the stealing).
Furthermore, a robbery may not end when the defendant secures possession of the property. The commission of the crime can continue as a matter of law during the time that the defendants were “securing the fruits of the' robbery.” See, Commonwealth v. Heinlein, 256 Mass. 387, 392 (1926).
With these cases in mind, the court nevertheless rules that in this case, as a matter of law, the facts cannot be stretched to fit the framework of robbery. The item was taken secretly and was hidden from view; by design, the taking was not from any person. No violence or threat of violence occurred within the store, or indeed, within the mall itself. The defendant was first approached approximately two hundred yards from the door between the store and the mall, well beyond the area of authorized pursuit for the loss prevention officers.
From the time he was approached, until he was inside the car, the defendant uttered no threats, and exerted no force against the pursuing store employees.[6] It is undisputed that they grabbed the defendant, pushed or threw him to the ground, and struggled with him to handcuff him. It was also undisputed that the defendant called out for help to a passerby in the garage. There was no evidence that either loss prevention officer stated his position to the defendant, after the initial encounter inside the mall. The very first threat of any kind made by the defendant against the store employees was after the defendant was inside his friend’s car. Then, while the store employees were pulling on his legs to extract him from the car, the defendant uttered his threat about having a gun. He exerted no actual force, and no gun was ever displayed.
Although, as stated above, a larceny may turn into a robbery where an assault is committed on someone who has a protective interest in the goods taken has interfered with the completion of the theft, see, Commonwealth v. Mavredakis, 430 Mass. 848, 855 (2000), a shoplifting by concealing should not be transformed into a robbery because a plainclothes loss prevention employee chases down a suspect well beyond the bounds of his authority to do so. There was nothing about the facts of this case that fit even the generous contours of robbery: taking from the person (or from his control) with force or threat of force to achieve the taking and the completion of same. What occurred in the garage were two assaults with a dangerous weapon, as the jury found, and on which the defendant was sentenced. The facts did not support a robbery of any kind.
DISMISSAL OF INDICTMENT # 01-0152-004 CHARGING LARCENY
At the suggestion of the court that the indictments for larceny and shoplifting were duplicative, the Com *472 monwealth nol prossed Indictments #005 & 006 charging shoplifting of a single pair of pants, under two types of shoplifting. The charge of larceny of goods with a value less than $250 was submitted to the jury, which returned a verdict of guilty.
Sua sponte, the court dismissed the larceny indictment on the grounds that it had no jurisdiction, once the shoplifting charges were nol prossed. G.L.c. 266, §30A provides in part: “If the retail value of the goods obtained is less than one hundred dollars, this section shall apply to the exclusion of section thirty.” Added by St. 1996 c. 430. While it did not repeal G.L.c. 266, §30, see Commonwealth v. Hudson, 404 Mass. 282 (1989), G.L.c. 266, §30A provided an exclusive set of offenses and penalties where the value of the goods taken is less than one hundred dollars. Accordingly, the court did not have jurisdiction over the larceny charge.
CONCLUSION
Treating the defendant’s motion for judgment notwithstanding the verdict as one filed pursuant to Mass.R.Crim.P. 25(b)(2), the court entered the finding of not guilty on Indictment #01-0152-001, charging armed robbery, after the jury returned its verdict of guilty on the lesser included offense of unarmed robbery. Indictment #01-0152-004, charging larceny was dismissed as the court lacked jurisdiction pursuant to G.L.c. 266, §30A.

 No one ever saw Cruz in possession of Filene’s property outside of the store. No property of Filene’s was ever recovered from Cruz.

 Peters and Lalli agreed that they had no authority to pursue Cruz once he entered the car. In fact, under store policy, pursuit is not to be maintained once a suspect “has gotten to/or inside a motor vehicle.”

 Cruz had ample time to dispose of any gun, if he ever had one.

 Testifying in his own defense, Cruz stated that he did not take any merchandise, and that he never heard Lalli or Peters identify themselves as Filene’s security. He claimed that they both laid hands on him, startling him. From his standpoint, they were two young Caucasians, completely unknown to him, who meant him harm. He was wearing a leather jacket and a gold chain, and he was afraid that these men were going to rob him and/or beat him up. He bolted, yelling at his cousin to run, too. He testified that Peters and Lalli grabbed him in the parking garage, threw him down on the floor, and hit him repeatedly. When he jumped up and ran away, one of them grabbed his jacket, which he never recovered.

 The lesser included offense of unarmed robbery was submitted to the jury over the defendant’s objection.

 The defendant did push a mall exit door shut behind him as he fled from the store employees, striking one of them.