NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11403

COMMONWEALTH  vs.  EUNICE M. FIELD.


Plymouth.     March 10, 2017. - August 1, 2017.

Present:  Gants, C.J., Hines, Lowy, & Budd, JJ.


Homicide.  Constitutional Law, Assistance of counsel, Admissions
     and confessions, Voluntariness of statement.  Mental
     Impairment.  Evidence, Admissions and confessions,
     Voluntariness of statement, Videotape, Competency.
     Practice, Criminal, Capital case, Assistance of counsel,
     Admissions and confessions, Voluntariness of statement,
     Competency to stand trial.



     Indictment found and returned in the Superior Court
Department on October 21, 2010.

     The case was tried before Charles J. Hely, J., and a motion
for a new trial, filed on June 16, 2014, was heard by him.


     Elizabeth Caddick for the defendant.
     Stacey L. Gauthier, Assistant District Attorney, for the
Commonwealth.


     LOWY, J.  In August, 2010, the victim, Lorraine Wachsman,

was stabbed to death.  A jury in the Superior Court found the

defendant guilty of murder in the first degree on theories of

deliberate premeditation and extreme atrocity or cruelty.  The defendant appeals from her conviction and from the denial of her motion for a new trial.

The defendant asserts several claims of ineffective assistance of counsel, centering on trial counsel's failure to consult with a mental health expert regarding (1) a defense of mental impairment, including impeaching the Commonwealth's mental health expert; (2) the suppression of statements made by the defendant during two police interviews; and (3) the defendant's competency to stand trial.  Although we conclude that trial counsel erred by failing to consult with a mental health expert, the error does not require reversal of the defendant's conviction.  See Commonwealth v. Nolin, 448 Mass. 207, 220 (2007); Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass 447 (2104).  We also decline to grant relief under G. L. c. 278, § 33E.

Background.  We recite the facts the jury could have found in the light most favorable to the Commonwealth, reserving certain details for our analysis of the issues.

The defendant, who was prescribed medication for bipolar disorder, and who had a history of substance abuse, came to know the victim through Alcoholics Anonymous (AA).  The defendant and the victim had a strained relationship for some time leading up to the victim's death.  The victim was close with the

defendant's former longtime girl friend and acted as the girl friend's AA "sponsor." The defendant blamed the victim for the defendant's romantic relationship with the girl friend ending in early 2010. Even before the events leading to the end of her romantic relationship with the girl friend, the defendant harbored resentment toward the victim. According to the defendant, the victim prevented her from visiting a sick mutual friend in the hospital, prior to that friend's death.

On the night before the victim's death, the defendant telephoned the victim and arranged to meet her the following morning. That night, the defendant wrote on her page on the Web site Facebook, "Tic toc, tic toc. I'm going to finish my book tomorrow. You're all going to be real interested in it because you're all in it. The title is Tormented Minds by Eunice Field." At around the same time, the defendant wrote a note, addressed to the former girl friend, which stated that the victim would "get what she deserves for coming between you and me,"[1] and that she had "snapped" because of her bipolar disorder.

---

[1] The note stated:

"I love you with all my heart. I know you know that. I'm sorry for not giving you a better life. My heart aches for what I have done to you. But remember to always follow your heart. My mind is tired now, so I have to go. Your [sic] the best thing that ever happened to me. I will love you always for that, but something happened to me, with my bipolar and all, I snapped. Lorraine will get what she deserves for coming between you and me. I love you. . .

The defendant traveled to the victim's apartment in Bridgewater on the morning of August 9, 2010, and killed the victim by stabbing her nine times with a knife in the neck, chest and back.  After killing the victim, the defendant drove herself to the Brockton police station.  When she arrived, she remained in her motor vehicle. Officers found the defendant, complaining of chest pain.  As they helped the defendant out of her automobile, they saw that she was covered in blood.  After being asked about the blood, the defendant stated that she had just killed someone.

The defendant was brought into the police station and seated on a bench in the lobby, where she repeated that she had killed someone, and when asked, gave the victim's name.  She also provided the officers with the name of the apartment complex in which the victim lived.  The defendant was taken to an interview room.  She was read the Miranda rights, and she responded that she understood them and that she wished to waive them.  Police conducted a videotaped interview in which the defendant made incriminating statements.

The defendant was then transported to the Bridgewater police station.  After the standard booking procedure, she again waived her Miranda rights.  The police conducted another

Eunice.  P.S. Someday we will all know the real truth. P.S.S. [sic] . . . Tell Truth.  'Wasn't my pain real'? by Eunice Field."

videotaped interview, during which she made additional incriminating statements. The police searched the victim's apartment that afternoon. They found the victim's body near the doorway and bloodstains throughout the apartment.

The two videotaped interviews were introduced at trial. The Commonwealth also called an expert who testified that, in watching the interviews of the defendant, he saw no evidence of manic behavior, depression, delusions, or hallucinations, and stated that he believed that she was criminally responsible for her actions.

The defendant did not contest that she had killed the victim. Counsel argued essentially that the defendant's severe bipolar disorder prevented her from forming the requisite intent to commit murder in the first degree. Counsel did not consult a mental health expert but did cross-examine the Commonwealth's expert about the severity of the defendant's bipolar disorder.

In October, 2012, the defendant was convicted of murder in the first degree. While her direct appeal was pending in this court, the defendant filed a motion for a new trial, in which newly appointed counsel argued that trial counsel had been ineffective on the same grounds that she asserts in this appeal. After an evidentiary hearing at which a mental health expert testified for the defendant, the judge, who also had been the trial judge, denied the motion. He determined, in essence, that

any errors committed by trial counsel did not affect the evidence that the defendant deliberately premeditated the murder. The defendant timely appealed, and the appeal was consolidated with her direct appeal.

Discussion. "When this court reviews a defendant's appeal from the denial of a motion for a new trial in conjunction with his direct appeal from an underlying conviction of murder, we review both under G. L. c. 278, § 33E" (citation omitted). Commonwealth v. Mercado, 466 Mass. 141, 145 (2013). The defendant's arguments on appeal stem from the ineffective assistance of counsel claims she made in her motion for a new trial.

In capital murder cases, we review ineffective assistance of counsel claims by first determining "whether the alleged lapse created a substantial likelihood of a miscarriage of justice, a standard more favorable to the defendant than the constitutional standard otherwise applied under Commonwealth v. Saferian, 366 Mass. 89, 96 (1974)" (quotations and citation omitted). Commonwealth v. Fulgiam, 477 Mass. 20, 29 (2017). We determine whether trial counsel erred and whether any such error was likely to influence the jury's conclusion. Id. Where an ineffective assistance of counsel claim is based on a tactical or strategic decision, we find error only if the decision was manifestly unreasonable when made. See Commonwealth v. LaCava,

438 Mass. 708, 713 (2003).  See also Commonwealth v. Kolenovic,
471 Mass. 664, 674 (2015).

1.  Failure to consult an expert and trial strategy.  Faced
with overwhelming evidence, including noncustodial admissions
from the defendant,[2] counsel's goal from the beginning of the
trial was to obtain a verdict of murder in the second degree.
The defendant claims that, had counsel consulted with a mental
health expert at the time of trial, counsel would have been
better able to mount a defense to the charge of murder in the
first degree, by presenting evidence regarding her mental
impairment at the time of the killing and by assisting him with
the cross-examination of the Commonwealth's expert witness.
Although we agree that trial counsel's decision not to consult
with an expert was error, the defendant has not established that
this failure was likely to have influenced the jury's verdict of
murder with deliberate premeditation.  See Commonwealth v.
Walker, 443 Mass. 213, 225 (2005).

Trial counsel apparently recognized, as evidenced by his ex
parte motion for expert funds prior to trial, that the
defendant's mental state was central to his strategy of

---

[2] Although, as discussed infra, the defendant asserts that
her custodial statements made to both Brockton and Bridgewater
police officers should have been suppressed, she does not
contest the admissibility of her earlier noncustodial statements
to the Brockton police, in which she admitted that she had
killed the victim.

obtaining a verdict of murder in the second degree.  Further, trial counsel knew that the defendant had claimed that she had run out of her prescription bipolar medication several days before the killing, and that in her handwritten note to her former girl friend, the defendant claimed that she had "snapped" due to her bipolar disorder.

Although trial counsel's overarching strategy to avoid a conviction of murder in the first degree may have been the best available defense, it was apparent from facts known and available to counsel that the defendant's mental impairment would be central to this defensive strategy.  Nonetheless, trial counsel never consulted with an expert regarding the defendant's mental impairment at the time of the killing.  Cf. Commonwealth v. Roberio, 428 Mass. 278, 279-280 (1998), S.C., 440 Mass. 245 (2003) (failure to investigate criminal responsibility defense manifestly unreasonable "if facts known to, or accessible to, trial counsel raised a reasonable doubt as to the defendant's mental condition" [citation omitted]).  Contrast Commonwealth v. Bois, 476 Mass. 15, 23 (2016) (decision not to offer medical records for mental health issue was not unreasonable when counsel had retained two experts to review records).  In his testimony at the hearing on the motion for a new trial, trial counsel did not provide a tactical justification for his failure to consult an expert.  See Commonwealth v. Alcide, 472 Mass.

150, 167-168 (2015) ("This is not a case where arguably reasoned tactical or strategic judgments . . . are called into question . . . . Rather, . . . defense counsel did not investigate the only realistic defense . . . to the charge of murder in the first degree" [quotations and citation omitted]). Trial counsel stated only that he did not consult with an expert because he thought he understood the issues and he was skeptical that the defendant could have "underst[oo]d what was going on." Accordingly, we conclude trial counsel erred by failing at least to consult with an expert regarding the defendant's mental impairment at the time she killed the victim.

Because of this conclusion, we now examine whether that error was likely to have affected the jury's verdict of murder in the first degree. Walker, 443 Mass. at 225. In order to prevail on a motion for a new trial based on a claim of ineffective assistance, the defendant must establish that consulting with an expert would have enabled trial counsel to mount an effective defense based on her lack of capacity for murder in the first degree. See Kolenovic, 471 Mass. at 673 (defendant bears burden to prove ineffectiveness). Moreover, where a jury have returned a conviction of murder in the first degree based on more than one theory, the verdict remains even if only one theory is sustained on appeal. See Nolin, 448 Mass. at 220.

At the hearing on the motion for the new trial, the defendant's expert contested that the defendant's confession had been voluntary and that she had had the capacity to act with extreme atrocity or cruelty.  He did not testify that the defendant lacked the capacity to deliberately premeditate. Indeed, the expert agreed that there was evidence to support the conclusion that the defendant had formulated a plan to kill the victim and had executed that plan.[3]  Contrast Roberio, 428 Mass. at 280-281 (at hearing on motion for new trial, defense expert testified that defendant was unable to conform conduct to law). Therefore, even assuming that the expert would have assisted the defense argument that the defendant could not have committed the murder with extreme atrocity or cruelty, the record does not establish that the expert could have assisted trial counsel in either presenting a defense to, or more effectively cross-examining the Commonwealth's expert regarding, deliberate premeditation.  As the judge noted at the hearing on the motion for the new trial, there is no basis on which to conclude that consultation with the expert would have altered the jury's

---

[3] We note also that the judge instructed the jury regarding lack of criminal responsibility, even though the motion judge noted that the defendant had, at no time, demonstrated that lack of criminal responsibility was an available ground of defense. The defendant does not, however, argue on appeal that she was not criminally responsible.  Nor did the defense expert so testify at the new trial motion hearing.

conviction of murder in the first degree based on deliberate premeditation.

2. <u>Failure to suppress the two police interviews</u>.  The defendant argues that, had trial counsel consulted with an expert, he could have successfully suppressed both videorecorded police interviews for being involuntary, based on her state of mind.  Without these recordings, the defendant contends, the jury would not have had a sufficient basis to find either premeditation or extreme atrocity or cruelty.

Trial counsel believed that allowing the jury to view the video recordings of both police interviews and to observe her strange behavior firsthand would increase the likelihood that the jury would find that the defendant had not premeditated the killing or acted with extreme atrocity or cruelty.  Trial counsel's choice not to challenge the admissibility of the interviews, therefore, was a tactical decision that was not without justification.[4]  We do not, however, need to resolve whether counsel's judgment was manifestly unreasonable because even if we were to assume that it was, as discussed below, we cannot conclude on this record that the admission of the videorecorded interviews was likely to have affected the jury's

---

[4] Given the overwhelming evidence of guilt separate and distinct from the videorecorded interviews, it was reasonable to allow the jury to see the defendant's behavior for themselves, rather than having witnesses describe it in an antiseptic fashion.

verdict of murder by deliberate premeditation.  See Fulgiam, 477 Mass. at 29 (where defendant's ineffective claim is based on failure to move to suppress, defendant must show motion would have succeeded and that failure created substantial likelihood of miscarriage of justice).

a. The Brockton police interview.  In the interview at the Brockton police station, the defendant made incriminating statements, including that she intended to kill the victim before she went to the victim's apartment and that she brought the murder weapon with her to the victim's apartment.  The defendant contends that, without this evidence, the jury could not have convicted the defendant of murder in the first degree based on deliberate premeditation.  We disagree.

The defendant's expert testified at the hearing on the motion for a new trial that the defendant exhibited some strange behaviors during the interview, such as slurred speech, requests for questions to be repeated, and long pauses between words when answering questions.  The expert further testified that the defendant may have been experiencing auditory hallucinations. Based on these behaviors, the expert stated his opinion that the defendant was not capable of voluntarily making these statements or waiving her Miranda rights.

Even if we assume, however, that the Brockton interview was involuntary and should have been suppressed, there was still

compelling evidence of premeditation.  Most significantly, the defendant had written a note in which she said the victim would get what "she deserves" for interfering with the defendant's relationship with her girl friend.  Additionally, the defendant telephoned the victim the night before the killing to arrange the meeting -- the same night that the defendant wrote a Facebook post that, although not directly alluding to the victim or a plot for murder, allowed the jury to conclude that the defendant was preparing to take some sort of drastic action the following day.  Finally, the defendant harbored ill feelings toward the victim for at least several years before the killing, and had arranged to meet the victim that morning.

b.  The Bridgewater police interview.  The defendant argues that the second recorded interview formed the evidentiary basis that allowed the jury to conclude that the defendant had acted with extreme atrocity or cruelty.  The defendant asserts that the interview could have been suppressed based on either a lack of voluntariness due to her mental state or the defendant's assertion that she wanted to stop answering questions until she received food and a cigarette.  See Commonwealth v. Howard, 469 Mass. 721, 735 (2014) (when defendant decides to stop answering questions, that decision must be "scrupulously honored" [citation omitted]).

Many of the incriminating statements from the second interview supported the Commonwealth's theory of extreme atrocity or cruelty, providing evidence of conscious suffering by the victim and the defendant's indifferent attitude towards that suffering. See Commonwealth v. Cunneen, 389 Mass. 216, 227 (1983). For example, the defendant told police that the victim had repeatedly asked her "why?" during the attack, and that, after the stabbing, she lay down on the floor with the victim, looked into her eyes, and told her she was "feisty" and needed to mind her own business. The defendant also stated that she felt good about what she had done.

Even assuming, however, that the Bridgewater interview formed the sole basis of the jury's finding as to extreme atrocity or cruelty and that the interview should have been excluded, the defendant's conviction of murder in the first degree would still stand, based on the compelling evidence of deliberate premeditation. Accordingly, even if the defendant were to have prevailed on a motion to suppress, the evidence of deliberate premeditation from other sources (such as her confessional note, her social media post, and her arranging the meeting with the victim) was so overwhelming that we cannot say admission of the video recording was likely to have influenced the jury's decision to convict her on the theory of premeditation. Wright, 411 Mass. at 682.

3. Defendant's competency to stand trial. Finally, the defendant argues that trial counsel was ineffective for failing to consult an expert to ascertain her competency to stand trial. Such an inquiry is appropriate where there is a "substantial question of possible doubt" regarding the defendant's competency (citation omitted). Commonwealth v. Companonio, 445 Mass. 39, 48-49 (2005), S.C., 472 Mass. 1004 (2015). Although the Commonwealth bears a burden to demonstrate a defendant's competency when the issue is raised before trial, Commonwealth v. Crowley, 393 Mass. 393, 400 (1984), the defendant bears the burden to demonstrate ineffectiveness when seeking a new trial. See Kolenovic, 471 Mass. at 673. The defendant has not met that burden.

The defendant has presented no evidence, beyond trial counsel's statement that he was not sure that the defendant understood the mental impairment defense, that the defendant was incompetent to stand trial. As noted by the trial judge, there was no testimony that the defendant lacked the ability to consult with a reasonable degree of understanding. Although the defendant argues on appeal that consulting with an expert may have helped trial counsel realize that the defendant lacked that ability, the defendant presented no evidence to support such a conclusion. The defendant's expert did not testify at the hearing on the motion for a new trial that the defendant was

incompetent to stand trial.  Accordingly, we are unable to say, on this record, that the defendant has raised a substantial doubt as to her competency to stand trial.  See Companonio, 445 Mass. at 48-49.

Conclusion.  We have reviewed the entire pursuant to our obligation under G. L. c. 278, § 33E.  Although counsel unreasonably failed to consult with a mental health expert for trial, we conclude that the defendant has failed to establish that such a consultation would have provided a basis to challenge the Commonwealth's theory of premeditated murder. Because we conclude that, even if the interviews should have been excluded and even if the second interview formed the sole basis for the jury's finding of extreme atrocity, there was ample evidence of premeditation independent of the interviews, the conviction of murder in the first degree stands. Accordingly, neither trial counsel's shortcomings nor the interests of justice require entry of a lesser degree of guilt or a new trial.  The defendant's conviction and the order denying the defendant's motion for a new trial are affirmed.

So ordered.