NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12358

COMMONWEALTH  vs.  STEVEN M. WEBSTER.


Barnstable.      April 6, 2018. - July 27, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Kafker, JJ.


Homicide.  Home Invasion.  Armed Assault in a
    Dwelling.  Robbery.  Firearms.  Felony-Murder Rule.  Joint
    Enterprise.  Cellular Telephone.  Deoxyribonucleic
    Acid.  Evidence, Joint venturer, Relevancy and materiality,
    Consciousness of guilt.  Practice, Criminal, Capital case,
    Instructions to jury.



    Indictments found and returned in the Superior Court
Department on March 7, 2013.

    The cases were tried before Gary A. Nickerson, J.


    Dana Alan Curhan (Christie L. Nader also present) for the
defendant.
    Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.


    BUDD, J.  In the afternoon of July 11, 2012, Andrew Stanley

was shot and killed at his home during an armed robbery and home

invasion involving the defendant and three coventurers.  The

defendant, Steven M. Webster, was convicted of murder in the

first degree on a theory of felony-murder, home invasion, armed assault in a dwelling, armed robbery,[1] and carrying a firearm without a license.[2]  The defendant asserts that the judge erred by denying his motion for a required finding of not guilty and by admitting certain evidence at trial.  The defendant asserts further that the judge should have instructed the jury on consciousness of guilt evidence sua sponte, and that his counsel was ineffective for failing to request such an instruction.  We affirm the defendant's convictions and decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E.

Background.  We summarize the facts as the jury could have found them, reserving certain details for discussion of specific issues.

At approximately 1:20 P.M. on July 11, 2012, police responded to reports of shots fired at a home in Hyannis. Police officers heard moaning and yelling coming from the house; one of them saw an individual he recognized as Keiko Thomas looking out a window.  The officers heard gunfire.  Three men were seen fleeing from the house and jumping over an adjacent

---

[1] The judge dismissed the armed robbery conviction, which was the predicate offense for felony-murder, contingent on the murder conviction being upheld.

[2] The defendant was tried with Eddie Mack, who was convicted of, among other offenses, murder in the first degree with extreme atrocity or cruelty.  Two other coventurers, Keiko Thomas and David Evans, pleaded guilty to several offenses including manslaughter.

fence; an officer recognized one of the fleeing men as Eddie Mack.  Officers pursued the men on foot and apprehended Thomas and another individual, David Evans.  The police also apprehended Mack, who was hiding behind an air conditioning unit outside a nearby store.  In the meantime, a witness saw a fourth man who had run back toward the house; this man was not apprehended.

Inside the home, police found the victim lying unresponsive on the living room floor.  His hands and feet were bound with handcuffs, duct tape, and zip ties.  He had numerous abrasions, injuries from blunt force trauma, and marks on his body consistent with the use of a stun gun.  The cause of death was a single gunshot wound to the torso.

Police recovered several items near the area where they had apprehended Mack.  Marijuana was inside the air conditioning unit, and $14,300 in cash and two cellular telephones (cell phones) were underneath a pallet next to the unit.  They also found two cell phones in a nearby alleyway.  Three of the cell phones belonged to the victim, Mack, and Thomas.  In the parking lot next to the house, police located a backpack containing the following:  two firearms, one of which was a loaded .45 caliber Colt handgun; gloves; a roll of duct tape consistent with the duct tape used to bind the victim; a stun gun; an aerosol can;

zip ties; and a black face mask, which had the defendant's deoxyribonucleic acid (DNA) on it.

Police discovered a spent shell casing that had been fired from the Colt handgun. The bullet retrieved from the victim's body was consistent with having come from that gun. Investigators found Mack's fingerprint on a crumpled piece of duct tape and his palm print on the lower part of a window.

In executing a search warrant at Thomas's home, located approximately one mile from the victim's home, police recovered a roll of duct tape, handcuffs, and one round of ammunition.

Cell phone records showed that, in the days leading up to the killing, Mack, Evans, and the defendant were communicating with one another via calls and text messages. From July 1 to July 11, the defendant telephoned or sent text messages to numbers associated with Evans 231 times. On July 3, the defendant sent a text message to Evans that stated, "Got some heat lined up," and "Bring dem rollie up, in the arm rest." On July 7, the defendant sent another text message to Evans stating, "cuz if you chillen im bout, I am to go snatch my lil heat by Norfolk and cum back." On July 9, Evans sent a text message to the defendant asking, "So, what about mack?" The defendant responded, "We out their what time was u tryna head out their?" Evans replied, "We gotta see dude at nine tho." Evans asked the defendant, "What you trying to do?" The

defendant responded, "stressing fam."  The defendant also communicated with Mack seven times on July 10 and July 11.

Between July 7 and 11, there were multiple text messages exchanged between Mack and Evans and forty-five communications between Mack and Thomas.  On July 8, Mack sent a text message to Evans saying, "Gotta come down so I can explain it better bro so we can get better understandin feel me."  The day before the killing, Mack sent another text message to Evans asking, "Yal good?"  Evans responded, "Yup.  We out there tomorrow night cuz."

Cell site location information (CSLI) evidence placed the defendant's and Mack's cell phones in the Barnstable area on July 10 and 11.  CSLI evidence further indicated that both of their cell phones were tracked being moved from Barnstable toward Boston approximately one hour after the homicide.  At 2:21 P.M., the defendant telephoned Mack, using a calling feature to block the caller's identification.  A few minutes later, a text message was sent from Evans to Mack, which stated, "What up bro its [me, i.e., the defendant] hit me back."  At 4 P.M., cell phones belonging to the defendant and Evans were in the Boston area.

Finally, tire impressions found in the dirt and gravel of the backyard at the scene were consistent with the pattern made by the tires of a Chevrolet Impala automobile that Evans had

rented a few days prior to the murder. The vehicle was found in Boston on July 13, approximately one mile from the defendant's home. The defendant's DNA was located on the interior and exterior of the rear passenger's side door of the vehicle.

The defendant was arrested in February, 2013. At trial, he argued that he was not at the crime scene. The defendant moved for a required finding of not guilty at the close of evidence; the judge denied the motion.

Discussion. The defendant argues that (1) there was insufficient evidence to convict him of the crimes; (2) the judge should have excluded the tire impression evidence as irrelevant and prejudicial; (3) the Commonwealth did not establish by a preponderance of evidence that the a cell phone number introduced at trial was used by Evans; and (4) the defendant was entitled to a consciousness of guilt instruction that the judge should have provided sua sponte, and because defense counsel failed to request such an instruction, counsel was ineffective.

1. Sufficiency of the evidence. The defendant contends that the Commonwealth failed to prove that he was at the victim's home at the time the crimes were committed, or that he was otherwise involved in participating in the joint venture. We disagree.

To convict the defendant as a joint venturer, "we must determine whether the evidence showed that he knowingly participated in the commission of the crime[s] charged, alone or with others, with the intent required for the offense[s]." Commonwealth v. Rakes, 478 Mass. 22, 32 (2017). "Under the familiar Latimore standard, the evidence is sufficient to reach the jury and a motion for a required finding of not guilty is properly denied if the evidence, viewed in the light most favorable to the Commonwealth and drawing all inferences in favor of the Commonwealth, would permit a rational jury to find each essential element of the crime beyond a reasonable doubt." Commonwealth v. Merry, 453 Mass. 653, 660 (2009), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

We conclude that the Commonwealth presented sufficient evidence for the jury to find that when the defendant planned and participated in, or agreed to help with, the crimes of which he was convicted, he had the requisite mental state. See Commonwealth v. Phillips, 452 Mass. 617, 633 (2008).

First, the Commonwealth presented evidence from which the jury could conclude that the defendant helped plan the crimes against the victim. That evidence included the many telephone calls and text messages exchanged between the defendant and Evans. As discussed, on July 3 and 7, the defendant sent a text message to Evans stating that he was getting "heat," i.e., a

gun.  On July 9, the defendant and Evans were coordinating meeting with a "dude at nine."  Evans asked the defendant, "What you trying to do?"  The defendant responded, "stressing fam." Jurors could infer from this exchange that the defendant participated in planning the crime, including procuring one or more firearms, and that the defendant was nervous about it.

There was also evidence that the defendant was at the scene of, and participated in, the crime.  CSLI evidence placed the defendant's cell phone in the area of the victim's home on July 11.  The defendant did not send a text message to either Evans or Mack on the morning of July 11, but Evans and Mack were communicating with one another from 8:39 A.M. to 12:10 P.M. that day, which, with other evidence, permitted an inference that the defendant was with Evans during that time.  No text messages were sent among any of the four men between 12:10 and 2:21 P.M., which included approximately one hour before and one hour after the murder.  This evidence allowed the jury to infer that the four coventurers were together at the victim's home at the time of the killing.  Additionally, the defendant's DNA was discovered on a mask located in a backpack containing other items that had been used in the killing.

There also was evidence of the defendant's flight from the scene.  While three men were seen jumping over an adjacent fence when police arrived, one witness saw a fourth man, who was not

apprehended that night.  Approximately one hour after the homicide, both Evans's and the defendant's cell phones were tracked being moved toward Boston.  At 4 P.M., both cell phones were in the Boston area, and on July 13, the vehicle that Evans had rented was located in Boston approximately one mile from the defendant's home.  Together, this evidence permitted an inference that the defendant and Evans had traveled together to the crime and, after the killing, the defendant fled back to Boston in Evans's vehicle.

The jury also could infer that a telephone call made from the defendant to Mack using the feature to block a caller's identification, and a subsequent text message sent from Evans's cell phone (rather than his own) to Mack stating, "What up bro its [me, (i.e., the defendant)] hit me back," were attempts made by the defendant to communicate with Mack after the crime while attempting to conceal his identity.  Moreover, the jury could infer that the defendant was in possession of both Evans's cell phone and his own.  See Commonwealth v. Barbosa, 477 Mass. 658, 667 (2017) (concluding defendant's flight from scene and subsequent calls to coventurers allowed reasonable inference of participation and shared intent).

Finally, when interviewed by the police after his arrest, the defendant made false statements from which the jury could infer consciousness of guilt.  He told police that he had never

been to Cape Cod and that he was not familiar with Barnstable.[3]

Although he acknowledged knowing Mack, the defendant initially

said that he did not know Evans. He later acknowledged that he

knew Evans by a street name, but stated that he had met him only

once. See Commonwealth v. Jones, 477 Mass. 307, 317 (2017)

("evidence of the defendant's consciousness of guilt . . . is

probative and can, in conjunction with other evidence, support a

verdict of guilt").

The defendant argues that, save for the DNA on the mask

found in the backpack that contained items used to commit the

crime, there was no physical evidence linking him to the crimes,

and that the mask alone cannot establish that the defendant

participated in the crime.[4] See, e.g., Commonwealth v. Morris,

422 Mass. 254, 257 (1996) (where "the only identification

evidence is the defendant's fingerprint at the crime scene, the

prosecution must prove beyond a reasonable doubt that the

fingerprint was placed there during the crime"). He also

contends that his statements demonstrating consciousness of

---

[3] Hyannis is a village in Barnstable.

[4] The defendant made this point during closing argument: that there was no evidence that a mask was used during the crime. It was for the jury to determine what weight, if any, to give this evidence. Commonwealth v. Barbosa, 477 Mass. 658, 666 (2017). See Commonwealth v. Evans, 438 Mass. 142, 151 (2002), cert. denied, 538 U.S. 966 (2003) ("Evidence of a defendant's possession of the means to commit a crime within a reasonable time of the crime charged is admissible without proof that the particular means was in fact the one used").

guilt are also insufficient to show participation.
See Commonwealth v. Gonzalez, 475 Mass. 396, 413 (2016) (motive
and consciousness of guilt combined are insufficient to
establish guilt beyond reasonable doubt).  The defendant
overlooks the fact that the mask and the statements made to
police were a fraction of the evidence tying him to the crime.

To be sure, the Commonwealth's case was circumstantial.
Even so, "circumstantial evidence is sufficient to establish
guilt beyond a reasonable doubt."  Commonwealth v. Miranda, 458
Mass. 100, 113 (2010), cert. denied, 565 U.S. 1013 (2011), S.C.,
474 Mass. 1008 (2016).  Inferences drawn from circumstantial
evidence "need only be reasonable and possible; [they] need not
be necessary or inescapable."  Commonwealth v. Beckett, 373
Mass. 329, 341 (1977).  To "the extent that conflicting
inferences may be drawn from the evidence, it is for the jury to
decide which version to credit."  Barbosa, 477 Mass. at 666,
quoting Miranda, supra at 113.  The Commonwealth was not
required to eliminate "every reasonable hypothesis of innocence,
provided the record as a whole supports a conclusion of guilt
beyond a reasonable doubt" (citation omitted).  Commonwealth
v. Merola, 405 Mass. 529, 533 (1989).

Here, taken together, the evidence, including the text
messages in which the defendant said he was procuring a firearm,
the CSLI evidence placing his cell phone in the area of the

victim's home on July 11 and tracking it as the defendant made his way from Barnstable to Boston just after the murder, his cell phone silence on the morning of the murder, his attempts to conceal his identity when he contacted Mack using Evans's cell phone after the murder, the fact that Evans could not have driven his rental car back to Boston right after the murder, the condition in which the victim was discovered, and the cash and marijuana recovered, as well as the DNA and the defendant's false statements to police was sufficient to allow the jury to conclude that the defendant knowingly participated in a joint venture to commit home invasion, armed assault in a dwelling, armed robbery, and carrying a firearm without a license.[5] Jones, 477 Mass. at 317-318, and cases cited. The evidence permitted an inference that the victim was killed in the course of the armed robbery, thereby providing sufficient evidence to find the defendant guilty of felony-murder. See Rakes, 478 Mass. at 32-33.

2. Tire impression evidence. At trial, the Commonwealth introduced evidence that tire impressions found in the dirt and gravel on the driveway behind the victim's home were consistent

---

[5] The text messages, backpack containing the handgun and a mask with the defendant's DNA, and the cash and marijuana recovered provided sufficient evidence demonstrating that the defendant possessed a firearm or knew that one of his coventurers possessed a firearm. See Commonwealth v. Williams, 475 Mass. 705, 710-711 (2016).

with the make and model of the vehicle that Evans had rented. The defendant argues that the evidence was irrelevant and unduly prejudicial.  Because the defendant objected to its admission during trial, we review for prejudicial error.  See Commonwealth v. Tu Trinh, 458 Mass. 776, 785 (2011).

The defendant first argues that the tire impression evidence was irrelevant because it was inconclusive, establishing only that, at some undetermined time, a vehicle with the same or similar tires made the impressions.  This point does not make the evidence irrelevant.  "The relevance threshold for the admission of evidence is low" (citation omitted).  Commonwealth v. Gerhardt, 477 Mass. 775, 782 (2017). Evidence is generally relevant where "(a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action."  Mass. G. Evid. § 401 (2018).

There was evidence that allowed the jury to infer that the vehicle was at the scene at the time of the crime.  Evans rented the vehicle days before the killing.  A text message exchange between Evans and Mack approximately one hour before the homicide indicated that Evans was driving a vehicle and that Mack instructed him to "pull in" the driveway:

Mack:  "Yall ready?"

Evans:  "Waiting on u."

Mack:    "We at table. . . ."

Evans:   "Still pull in."

Mack:    "Yup."

Even though Evans could not have driven the vehicle to
Boston because he had been apprehended, it was located a little
over one mile away from the defendant's home two days after the
murder and one day after it should have been returned to the
rental company.  Most importantly, the defendant's DNA was found
in the vehicle, making it relevant to whether he was in a
vehicle that had been tied to the crime scene at around the time
of the murder and whether he used the vehicle to flee.
See Gerhardt, 477 Mass. at 782, quoting Commonwealth v. Sicari,
434 Mass. 732, 750 (2001), cert. denied, 534 U.S. 1142 (2002)
(to be relevant, evidence need not directly prove proposition,
"it must only provide a link in the chain of proof").

The defendant also argues that the admission of the tire
impression evidence was unduly prejudicial because it misled the
jury into believing that there was a perfect match.[6]  There was

---

[6] In addition, the defendant argues that the tire impression
evidence is prejudicial because the jury may have viewed the
evidence as infallible given the "CSI effect."  See United
States v. Fields, 483 F.3d 313, 355 n.39 (5th Cir. 2007), cert.
denied, 552 U.S. 1144 (2008)  ("The 'CSI effect" is a term . . .
coined to describe a supposed influence that watching the
television show CSI: Crime Scene Investigation has on juror
behavior").  We have been reluctant to recognize the CSI effect
given its uncertain foundation.  See Commonwealth v. Seng, 456
Mass. 490, 504 (2010) ("'The CSI effect' is a subject beyond the

no error.  "The weighing of the prejudicial effect and probative value of evidence is within the sound discretion of the trial judge, the exercise of which we will not overturn unless we find palpable error."  Commonwealth v. Bresilla, 470 Mass. 422, 436 (2015), quoting Commonwealth v. Bonds, 445 Mass. 821, 831 (2006).

Here, witnesses testified only that the tire impressions were consistent with the make and model of the tires on the vehicle.  On cross-examination they testified that the impressions could have been made by any other tire of similar size and pattern.  During closing arguments, the Commonwealth argued only that the tire impressions were consistent with the vehicle, and defense counsel made the point that the tires of many vehicles could have made the same impressions.  The jury were free to accept or reject the Commonwealth's theory. See Barbosa, 477 Mass. at 666.  There was no error.  Commonwealth v. Torres, 469 Mass. 398, 407 (2014) (testimony "that is not definitive, but expressed in terms of observations being 'consistent with' a particular cause . . . does not render the opinion inadmissible on the ground that it is 'speculative'").

---

permissible scope of judicial notice").  Instead, we have stated that "jurors can and should be trusted to separate what they see on television from what evidence is presented at trial."  Id.

3. Cell phone number evidence. The judge permitted the Commonwealth to elicit evidence regarding a cell phone number it claimed was used by Evans de bene, that is, prior to presenting foundational evidence that the number was connected to Evans. After the Commonwealth presented its case, the defendant moved to strike the evidence regarding the number on the ground that the Commonwealth failed to lay a foundation for it. The judge denied the motion. The defendant objected. The defendant now argues that the Commonwealth failed to prove the connection between the number and Evans.

Where the Commonwealth seeks to introduce evidence of cell phone communications, "the judge [is] required to determine whether the evidence was sufficient for a reasonable jury to find by a preponderance of the evidence that the [individual] authored" the communications. Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). The Commonwealth may meet this burden by way of either direct or circumstantial evidence, including the contents, substance, or other distinctive characteristics of the cellphone. Id. at 447-448, quoting Mass. G. Evid. § 901(b)(1), (4). A judge may to look to "'confirming circumstances' that would allow a reasonable jury to conclude that [a piece of] evidence is what its proponent claims it to be." Purdy, supra at 449. See id. at 448 (absent direct evidence and testimony,

evidence was still sufficient to authenticate electronic mail messages as having originated from defendant).

Here, although the number was not registered in Evans's name and no one testified that the number belonged to him, we conclude that the confirming circumstances that the Commonwealth presented were sufficient to meet its burden and that the judge properly admitted the evidence. The cell phone data indicated the user had communications with the defendant, Mack, and Michelle Evans, which Evans told police is the name of his mother. The jury heard that Evans's street name was "Trigger" and he was listed in Mack's cell phone as "TR." Moreover, there were four men, including Evans, who participated in the crimes and communicated with each other via cell phone. The cell phone numbers belonging to the defendant, Mack, and Thomas were clear in the record. It is reasonable to infer that the cell phone number the defendant challenges belonged to Evans. The possibility that the cell phone could have belonged to another individual goes to the weight of the evidence, not its admissibility. Purdy, 459 Mass. at 451.

To the extent that there were any concerns about the evidence, the judge provided instructions to the jury regarding the authenticity of the cell phone messages. The jury had "to be satisfied as to the authenticity of each individual electronic communication before [they could] consider

it."  Commonwealth v. Pillai, 445 Mass. 175, 190 (2005) (judge's instruction adequately addressed any prejudice).  "The jury are presumed to have followed" jury instructions.  Commonwealth v. Sleeper, 435 Mass. 581, 596 (2002)).

4.  Consciousness of guilt instruction.  The defendant argues that he was entitled to an instruction that it was for the jury to determine what weight to give consciousness of guilt evidence, that they were not to convict the defendant on consciousness of guilt evidence alone, and that such conduct did not necessarily reflect guilty feelings.  Commonwealth v. Cole, 473 Mass. 317, 325 (2015).  See Commonwealth v. Toney, 385 Mass. 575, 585 (1982).  The defendant did not request such an instruction at trial, and the judge did not provide one.  The defendant now contends that the judge's failure to instruct was error and that his counsel's failure to request the instruction was ineffective assistance.  There was no error.

A judge need not instruct on consciousness of guilt in the absence of a request.  Commonwealth v. Evans, 469 Mass. 834, 845 n.14 (2014).  Further, "[w]here an ineffective assistance of counsel claim is based on a tactical or strategic decision," we do not find error unless "the decision was manifestly unreasonable when made."  Commonwealth v. Field, 477 Mass. 553, 556 (2017).  This court has recognized that defense counsel may decide not to pursue a limiting instruction in order to avoid

calling further attention to the harmful evidence. Commonwealth v. Washington, 449 Mass. 476, 488 (2007). Here, defense counsel could have been concerned that an instruction would draw the jury's attention to the defendant's false statements. See id. Therefore, we conclude that defense counsel's decision was not manifestly unreasonable when made, and thus the defendant was not denied ineffective assistance of counsel. Field, supra at 556.

5. Review under G. L. c. 278, § 33E. The defendant asks us to exercise our extraordinary power to grant relief under G. L. c. 278, § 33E. We have reviewed the record and discern no basis to set aside or reduce the verdict of murder in the first degree or to order a new trial.

Judgments affirmed.