NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-10992

COMMONWEALTH vs. DAVID COPELAND.

Suffolk.    November 9, 2018. - January 18, 2019.

Present:  Gants, C.J., Lowy, Budd, & Cypher, JJ.


Homicide. Robbery. Felony-Murder Rule. Practice, Criminal,
    Instructions to jury, Argument by prosecutor, Assistance of
    counsel, Capital case. Constitutional Law, Assistance of
    counsel.



Indictments found and returned in the Superior Court
Department on September 29, 2008.

The cases were tried before Frank M. Gaziano, J.


Stephen Paul Maidman for the defendant.
Julianne Campbell, Assistant District Attorney, for the
Commonwealth.


LOWY, J.  On July 29, 2008, John Marshall (victim) was

stabbed to death in a parking lot in the Roxbury section of

Boston.  A grand jury returned indictments charging the

defendant, David Copeland, with murder in the first degree and

armed robbery.  At trial, the defendant conceded that he stabbed

the victim, but argued that he suffered from posttraumatic stress disorder (PTSD) at the time of the killing, that the killing was a spontaneous event, and that he did not rob the victim.  A Superior Court jury convicted the defendant of felony-murder in the first degree and armed robbery.  On appeal from his convictions, the defendant challenges (1) the Commonwealth's opening statement; (2) the sufficiency of the evidence on the offenses of felony-murder and deliberately premeditated murder; (3) the judge's refusal to instruct the jury on felony-murder in the second degree; (4) the Commonwealth's closing argument; and (5) defense counsel's ineffective performance.  He also requests that we exercise our power under G. L. c. 278, § 33E, to order a new trial or reduce the verdict to voluntary manslaughter.  Because we find neither reversible error nor a reason to exercise our authority under § 33E, we affirm the judgments.

Background.  We recite the evidence presented during the Commonwealth's case-in-chief, in the light most favorable to the Commonwealth.  Commonwealth v. Veiovis, 477 Mass. 472, 474 (2017).  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On July 28 and 29, 2008, the defendant and two women were smoking "crack" cocaine at an apartment on Regent Street. They ran out of cocaine multiple times, and on each occasion someone left the apartment and got more.  But eventually, on the

second day, both the cocaine and the money ran out. The defendant then asked one of the women if he could use her cellular telephone, saying that he was going to meet somebody. The defendant left the apartment wearing a white T-shirt.

That same day, a witness telephoned the police after she saw two men fighting in the parking lot next to her apartment building on Dale Street. She saw a man in a white shirt apparently punching the victim, who was wearing a black shirt. The victim was "[j]ust standing there" leaning against his vehicle. The man in the white shirt eventually walked out of the parking lot toward Regent Street, leaving the victim lying on the ground. The witness then saw blood on the ground of the parking lot.

At that time, a police officer who was in the area saw the defendant walking away from Dale Street on Regent Street. The defendant was sweating, bleeding, and shirtless; he was holding a white T-shirt in his hands. The officer asked the defendant if he needed help, and the defendant "shrugged [the officer] off and kept walking." After receiving a radio call about a stabbing in a Dale Street parking lot, the officer put out a description of the defendant and said the defendant might be in a nearby building. Officers began to canvass the area.

The defendant returned to the Regent Street apartment sweaty and with blood on him. He first told one of the women at

the apartment that he had fallen, but then said that "he got someone" and that he "took care of business."  The women told the defendant that police were gathering outside.  After hearing this, the defendant handed one of the women cocaine, marijuana, and money, all of which had blood on them.  He also told the other woman that she did not need to open the door.  He went into the kitchen, saying that he was trying to get to the back door, but he was still inside when a police officer entered the apartment.

 After the defendant's arrest, police found blood containing the victim's deoxyribonucleic acid (DNA) on the defendant's ear. The defendant initially told a detective that he had not left the Regent Street apartment building on the day of the killing. But when the detective told the defendant that he had evidence to the contrary, the defendant acknowledged that he had left once to buy alcohol.

 Meanwhile, police and paramedics found the victim lying on his back between two parked vehicles in the Dale Street parking lot, covered in blood.  He was wearing a dark shirt, either navy blue or black.  The victim was a crack cocaine dealer, and he also used marijuana.  According to his girlfriend, who had previously seen drugs in the victim's vehicle, he had been selling drugs on July 29.

5

The victim died at the hospital from an eight inch stab wound to the heart.  He had other wounds on his body, including wounds on his hands consistent with attempts to block a knife. There were components of marijuana in his blood.

Inside the victim's vehicle, which was at the crime scene, police found crack cocaine and a hat with the defendant's DNA on it.  When police searched the Regent Street apartment, they found a knife wrapped in a white T-shirt.  The medical examiner testified that the knife could have caused the injury that killed the victim.  Blood on the knife matched the victim's DNA. Police officers also examined video footage captured on July 29 by surveillance cameras next to the Dale Street parking lot. The defendant appeared on that footage at around the time of the killing.

The defendant moved at the close of the Commonwealth's case for a required finding of not guilty on the armed robbery charge.  The judge denied the motion.  The defendant then presented multiple witnesses, including a psychiatrist who had interviewed the defendant, to testify about an alleged sexual assault against the defendant that occurred in February 2008. The psychiatrist testified that the assault resulted in PTSD that affected the defendant's mental state on the day of the killing.

The defendant also testified. He asserted that he planned to give the victim marijuana in exchange for crack cocaine on July 29, and he claimed to have exchanged drugs with the victim before. He also stated that he took with him a knife from the kitchen of the apartment when he went to meet the victim. After seeing the amount of cocaine that the victim wanted to exchange for the marijuana, the defendant tried to back out of the deal. He testified that a fight ensued inside the vehicle, resulting in the defendant stabbing the victim. He stated that the cocaine that the victim had offered him was not the same cocaine that the police found in the victim's vehicle.

On cross examination, the defendant admitted that his entire postarrest statement to police was a lie. He also insisted that he had not handed over any cocaine on his return to the apartment, but had no answer for where the cocaine that the victim had offered him went.

After the defense rested, the defendant moved for a required finding of not guilty on the offenses of murder in the first degree, murder in the second degree, and armed robbery. After brief oral argument, during which the defendant emphasized the lack of evidence with respect to felony-murder, the judge denied the motion "as to the armed robbery, felony murder and other theories of first degree murder." The jury were instructed on murder in the first degree based on the theory of

premeditation; murder in the first degree based on the theory of felony-murder, with armed robbery as the predicate felony; murder in the second degree based on malice; manslaughter; and armed robbery.  The judge declined to instruct the jury on murder in the second degree based on larceny from a person.  After the jury returned their verdict, the defendant filed motions under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), regarding the felony-murder offense and the armed robbery offense.  The judge denied both motions.[1]

Discussion.  1.  <u>Sufficiency of the evidence for felony-murder</u>.  The defendant contends that the evidence did not support a conviction of felony-murder because there was insufficient evidence of armed robbery, the predicate felony.[2]  According to the defendant, the judge erred by failing to enter sua sponte a required finding of not guilty on the felony-murder

---

[1] In denying the motion regarding felony-murder, the judge stated that he found "no basis in the facts to set aside or reduce the verdict."  In denying the motion regarding armed robbery, the judge concluded that "[t]he evidence supported the conviction."

[2] The defendant also argues that the alleged armed robbery merges with the killing because the Commonwealth failed to show two separate assaults.  However, in Commonwealth v. Christian, 430 Mass. 552, 556 (2000), overruled on other grounds by Commonwealth v. Paulding, 438 Mass. 1 (2002), we observed that we could "envision no situation in which an armed robbery would not support a conviction of felony-murder."  We have recently reaffirmed this conclusion, see Commonwealth v. Fredette, 480 Mass. 75, 83 (2018), and we discern no reason to disturb it.

charge at the close of the Commonwealth's case, and erred again by denying the defendant's motion for a required finding at the close of all the evidence.[3]

"In reviewing the denial of a motion for a required finding, we must determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged" (quotation and citation omitted).  Commonwealth v. Whitaker, 460 Mass. 409, 416 (2011).  "[A] conviction may rest upon circumstantial evidence alone, and the inferences a jury may draw from the relevant evidence need only be reasonable and possible," not "necessary or inescapable" (citation omitted). Commonwealth v. Martin, 467 Mass. 291, 312 (2014).  "[W]e do not

---

[3] The defendant also contends that the evidence did not support a conviction of deliberately premeditated murder.  This argument fails because the defendant was not convicted of that crime.  See, e.g., Commonwealth v. Forde, 392 Mass. 453, 456 (1984) (even if evidence of deliberate premeditation was insufficient, error would be harmless beyond reasonable doubt because defendant convicted of murder in second degree). Moreover, although we do not decide whether the evidence was sufficient to sustain a conviction of deliberate premeditation, the facts here are similar to cases where we have upheld such a conviction.  See Commonwealth v. Salazar, 481 Mass. 105, 112 (2018) (sufficient evidence of deliberate premeditation where "defendant retrieved the weapon . . . before the killing," "fatal wound was a deep wound to the victim's neck," and "victim had at least six other stab or incised wounds, including defensive wounds").

weigh supporting evidence against conflicting evidence when considering whether the jury could have found each element of the crime charged."  Id.

When reviewing a motion for a required finding that was filed at the close of the Commonwealth's case and was renewed at the close of all the evidence, "[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time.  We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case" (alteration omitted).  Commonwealth v. Semedo, 456 Mass. 1, 8 (2010), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).[4]

To prove that the defendant committed armed robbery, the Commonwealth had to show that the defendant (1) "[took] money or other property from the victim," (2) "with the intent to steal it," (3) "while armed with a dangerous weapon," and (4) "by

---

[4] It is clear that the defendant moved for a required finding of not guilty on the offense of felony-murder at the close of all the evidence.  It is less clear that the defendant preserved his rights on the felony-murder offense at the close of the Commonwealth's case.  At that point, the defendant moved for a required finding on armed robbery, the predicate felony, but not on felony-murder.  However, for purposes of our analysis we assume, without deciding, that the defendant preserved his rights on the offense of felony-murder when he moved for a required finding on armed robbery.

applying actual force to the victim or putting the victim in fear through the use of threatening words or gestures." Commonwealth v. Benitez, 464 Mass. 686, 694 n.12 (2013). According to the defendant, at the close of the Commonwealth's case there was no evidence that the defendant took money or property from the victim, that any of the victim's money or property was missing, that the defendant applied actual force against or threatened the victim, or that the defendant intended to steal from the victim. Additionally, the defendant argues that the Commonwealth failed to prove "that the taking did not occur as a mere afterthought to the killing." We disagree. See Commonwealth v. Webster, 480 Mass. 161, 167-168 (2018).

From the evidence presented during the Commonwealth's case-in-chief, a rational jury could infer that the defendant intended to and did steal from the victim on July 29, and that he did so using a knife to stab the victim. The defendant, apparently armed with a knife, left the Regent Street apartment to meet somebody after he and his companions had run out of money and cocaine. He later returned to the apartment with money and cocaine that had blood on them. Upon his return, the defendant said that he "got someone" and that he "took care of business." See Commonwealth v. Morgan, 460 Mass. 277, 290 (2011) ("evidence tend[ing] to show that the defendant needed money and went to various extremes to get it" relevant to

defendant's motive to rob). Cf. Commonwealth v. Cannon, 449 Mass. 462, 469 (2007) (sufficient evidence of plan to rob where "jury could reasonably infer that the defendant . . . knew that the victim kept both money and illegal drugs in his apartment").[5]

In addition, there was compelling circumstantial evidence that the victim possessed drugs on July 29. He had been selling drugs that day, he kept drugs in his vehicle, crack cocaine was found in his vehicle after he died, and he had been using marijuana at some point before being killed. There also was abundant evidence connecting the defendant with the crime scene. A hat the defendant had worn was found in the victim's vehicle; the defendant was wearing a white T-shirt when he left the apartment, a witness saw a man with a white shirt leaving the Dale Street parking lot after a fight with the victim, and the same witness saw blood on the ground near the victim; the defendant was observed by a police officer near the crime scene, sweaty and bloody and holding a white T-shirt, around the time that the crime was reported; and surveillance footage showed the

---

[5] Our conclusion disposes of the defendant's assertion that the Commonwealth improperly mentioned in its opening statement and closing argument that the defendant had a plan to rob the victim. See Commonwealth v. DePina, 476 Mass. 614, 627 (2017) ("A prosecutor's opening statement may reference anything that he or she reasonably believes in good faith will be proved by evidence introduced during the course of the trial . . ."). See also Commonwealth v. Veiovis, 477 Mass. 472, 489 (2017) (closing argument proper where assertion "was fair argument based on inferences from the evidence in the case").

defendant near the Dale Street parking lot on the day of the killing. The victim's blood was found on the defendant's body after his arrest, and a knife with the victim's blood on it that could have been used to inflict the victim's fatal wound was found wrapped in a white T-shirt in the apartment to which the defendant returned on July 29. See Commonwealth v. McGrath, 358 Mass. 314, 318 (1970) (finding sufficient evidence of armed robbery of drug store where, inter alia, defendant was near drug store around time of murders and, one hour after crime, "was in possession of the revolver which was proved to have been the one that killed" victim).

The defendant's consciousness of guilt further supports our conclusion. See Martin, 467 Mass. at 315, quoting Commonwealth v. Booker, 386 Mass. 466, 470 (1982) ("evidence of consciousness of guilt 'may be sufficient to amass a quantum of proof necessary to prove guilt' when 'coupled with other probable inferences'"). Upon returning to the apartment, the defendant initially explained his physical condition to one of the women by saying that he had fallen, but then said that he "got someone"; after learning that police were outside the apartment, the defendant got rid of bloody drugs and money, told one of the women that she need not open the apartment door, and said that he was trying to get to the apartment's back door; and after being arrested, the defendant admitted to the police that he had

left the apartment only after a detective told him there was evidence to that effect.  See Commonwealth v. Cook, 364 Mass. 767, 772 (1974) (defendant's "contradictory statements and attempted flight" suggested "consciousness of guilt").

Although the evidence the defendant introduced after the Commonwealth rested contradicted part of the Commonwealth's case, the Commonwealth's case did not deteriorate.  A finding of not guilty or guilty of a lesser offense required the jury to reject the testimony of the Commonwealth's witnesses in favor of the defendant's version of events. "[Q]uestions of credibility belong properly to the finder of fact . . . and, in considering whether the evidence is sufficient to support a conviction, should be resolved in favor of the Commonwealth" (citation omitted).  Martin, 467 Mass. at 315.  The evidence before the jury at the close of all the evidence, when viewed in the light most favorable to the Commonwealth, remained sufficient to support a conviction of felony-murder based on armed robbery.[6]

---

[6] The cases the defendant cites in support of his argument do not affect our conclusion.  In Commonwealth v. Mandile, 403 Mass. 93, 98 (1988), we decided that there was insufficient evidence of armed robbery where the only evidence was "motive, means, unexplained possession of funds, and consciousness of guilt" (footnote omitted).  The only motive suggested in Mandile was a desire for money, but there was no evidence that the murder victim "kept large sums of money in his home."  Id. at 94-95, 97.  In addition, there was no evidence linking the money found on the defendant in Mandile with the murder victim.  Id. at 95, 97.  Here, in contrast, the defendant had run out of

2. <u>Jury instructions</u>. The defendant contends that the judge erred in declining to instruct the jury on felony-murder in the second degree based on the offense of larceny from a person. "[A]n instruction on felony-murder in the second degree is necessary when there is a rational basis in the evidence to warrant the instruction" (quotations and citation omitted). <u>Commonwealth</u> v. <u>Holley</u>, 478 Mass. 508, 528 (2017). There was no such rational basis here.

"To return a verdict of larceny, not robbery, a jury must conclude that any property was taken without the threat or use of force." <u>Commonwealth</u> v. <u>Christian</u>, 430 Mass. 552, 558 (2000), overruled on another ground by <u>Commonwealth</u> v. <u>Paulding</u>, 438 Mass. 1 (2002). Here, all the evidence "indicates a confrontation and force . . . . The facts cannot support a finding that the killing occurred in the course of larceny from

---

drugs and the murder victim was a drug dealer. Moreover, the drugs and money the defendant handed over after returning to the apartment had blood on them, forging a link between the property and the murder victim. The situation here is more similar to the cases distinguished in <u>Mandile</u>. In those cases, according to the <u>Mandile</u> court, we upheld convictions in the face of "no direct evidence of a loss of money" because "there was circumstantial evidence from which a jury could infer a robbery or attempted robbery." <u>Id</u>. at 97. The defendant also cites <u>Commonwealth</u> v. <u>Moran</u>, 387 Mass. 644, 646 (1982), in which we concluded "that where the intent to steal is no more than an afterthought to a previous assault, there is no robbery." Here, however, the Commonwealth presented sufficient evidence to allow a rational jury to find that the defendant planned to rob the victim and thus that the robbery was not an afterthought. See <u>id</u>. (facts supported finding that robbery was not afterthought).

the person, because force or the threat of force permeated the encounter . . . ." Commonwealth v. Glowacki, 398 Mass. 507, 514 (1986), overruled on another ground by Christian, supra. Therefore, the judge did not err in declining to instruct on felony-murder in the second degree.  See Commonwealth v. Ford, 35 Mass. App. Ct. 752, 756 (1994) (affirming judge's refusal to instruct on larceny from person where "neither the prosecutor's theory of what occurred nor the defendant's theory raised any possibility of a finding of the lesser crime").

3.  Commonwealth's closing argument.  The defendant contends that the Commonwealth made several improper comments during its closing argument.  Because the defendant did not object to the closing argument at trial, we review to determine whether any errors created a substantial likelihood of a miscarriage of justice.  Veiovis, 477 Mass. at 488.

Only one of the defendant's contentions requires significant discussion.  According to the defendant, the Commonwealth improperly referred to the defendant's medical expert as "a paid expert with a job to do . . . , and that job was to come up with the excuse and then come in and sell that excuse to you."  "[I]t is improper for a prosecutor to suggest that an expert witness's testimony was 'bought' by a defendant or to characterize the witness as a 'hired gun' where . . . there was no evidence that he was paid more than his customary

fee" (citation omitted).  Commonwealth v. Bishop, 461 Mass. 586, 598 (2012).  Here, the expert testified that defense counsel did not place a "specific limit" on how much money he could spend.  However, he also revealed that he was conscious of avoiding unnecessary expenses, testifying that he was "[m]indful of not trying to cost the Commonwealth . . . too much money in doing work that is not really going to produce much by way of my opinion."  Given this evidence, it was improper for the Commonwealth to suggest that the defendant's expert was paid to reach a particular conclusion.

Nevertheless, it is unlikely that this error influenced the jury's decision.  It was an isolated error, made in the context of a larger, proper discussion of evidence showing weaknesses in the expert's assessment of the defendant, and the judge instructed the jury that closing arguments are not evidence.  See Commonwealth v. Kozec, 399 Mass. 514, 517 (1987) ("instructions may mitigate any prejudice in the final argument").  Therefore, the error did not create a substantial likelihood of a miscarriage of justice.  See Commonwealth v. Goitia, 480 Mass. 763, 768 (2018), quoting Commonwealth v. Wright, 411 Mass. 678, 682 (1992), S.C., 469 Mass. 447 (2014) (substantial likelihood of miscarriage of justice requires error that is "likely to have influenced the jury's conclusion").

Second, the defendant takes issue with the Commonwealth's suggestion that the defendant was not sexually assaulted in February 2008. In his closing, the prosecutor acknowledged that he was "not here to try and prove to you that this man was not assaulted." He questioned whether the incident occurred, however, stating that "one thing is for sure about whatever happened in February of 2008, there's a lot of questions about it," and that "[m]aybe something happened, maybe it didn't." "A prosecutor may not misstate evidence or refer to facts not in evidence in a closing argument." Commonwealth v. Goddard, 476 Mass. 443, 449 (2017). But a prosecutor "may properly attack the credibility of witnesses." Commonwealth v. Donovan, 422 Mass. 349, 357 (1996). That is what the prosecutor did here. There was no error.

Third, the Commonwealth allegedly erred by suggesting that the defendant's psychiatrist expert incorrectly examined the defendant and had an obligation to investigate other sources of information about the defendant. In his closing, the prosecutor observed multiple times that the psychiatrist had not verified the defendant's statements to the psychiatrist. The Commonwealth emphasized this lack of corroboration on cross-examination; the assertions during closing argument were therefore grounded in the evidence. Moreover, it is proper to demonstrate that an opposing expert's opinion is based

exclusively on the defendant's version of events.  See Commonwealth v. Johnston, 467 Mass. 674, 698 (2014) (no error where prosecutor's cross-examination of expert "went to the thoroughness of [expert's] examination of the defendant"); Commonwealth v. Noxon, 319 Mass. 495, 538 (1946) ("it is open to the other party to show on cross-examination of the expert that there are facts in the case not accounted for in the opinion of the expert").  We find no error.

Fourth, the defendant argues that the Commonwealth improperly explained premeditation as capable of occurring with a snap of the fingers.  This explanation was not erroneous where it was a correct statement of the law.  "No particular length of time of reflection is required to find deliberate premeditation, and the decision may be made in only a few seconds." Commonwealth v. Rakes, 478 Mass. 22, 34 (2017).

Fifth, the defendant contends that the Commonwealth improperly suggested to the jury that crack dealers do not exchange crack for marijuana.  The prosecutor stated in his closing argument that the defendant

> "went out to go buy crack from [the victim].  And he is somehow, and apply your common sense to this . . . , he has somehow found the crack dealer that exchanges marijuana for crack . . . .  [H]e . . . wants you to believe that [the victim] is okay . . . being on sort of an even exchange business.  I'll get some marijuana from you in exchange for crack[.]  Do you really think that that's the way crack dealers work in the city of Boston?  That they don't come out looking for money?"

There was no evidence at trial to suggest that crack dealers in general do not barter. However, the jury learned that the defendant told the psychiatrist expert during an interview that the defendant "would usually buy from [the victim] using cash, but on this occasion he sought to exchange marijuana for cocaine." This evidence suggests that it would have been unusual for the defendant to pay for cocaine with marijuana. Therefore, the Commonwealth's assertions were properly grounded in the evidence. See Veiovis, 477 Mass. at 489.

Finally, the Commonwealth allegedly erred in arguing that the defendant ran from accountability after killing the victim. The prosecutor argued that the defendant "fled the scene. He ran, and he . . . did not run from fear. He did not run from danger. He ran from accountability, and he has continued to run from accountability for what he did that day from that day to this." There was abundant evidence at trial that the defendant tried to avoid arrest and prosecution. "Here, where the prosecutor's references to the defendant's accountability for his actions were . . . connected to specific acts of the defendant that were in evidence, the comments were not improper." Commonwealth v. Tavares, 471 Mass. 430, 444 (2015).

4. Ineffective assistance of counsel. The defendant contends that his trial counsel was constitutionally

ineffective. Because this is a capital case, we review for a substantial likelihood of a miscarriage of justice by asking whether there was error and, if so, whether the error "was likely to have influenced the jury's conclusion." Commonwealth v. Alicea, 464 Mass. 837, 845 (2013), quoting Wright, 411 Mass. at 682.

According to the defendant, trial counsel improperly failed to (1) move for a required finding of not guilty on deliberately premeditated murder and felony-murder at the close of the Commonwealth's case, and (2) object to the Commonwealth's closing argument. The defendant's claims cannot succeed here, where we have already concluded that even if there was insufficient evidence to convict on deliberately premeditated murder, the error does not require reversal (see note 3, supra); that there was sufficient evidence to convict the defendant of felony-murder at the close of the Commonwealth's case; and that any error in the Commonwealth's closing argument did not create a substantial likelihood of a miscarriage of justice. See Commonwealth v. Maynard, 436 Mass. 558, 572-573 (2002) ("Because it has already been determined that the prosecutor's misstatement does not warrant reversal under G. L. c. 278, § 33E, [defendant] cannot now succeed on his ineffective assistance of counsel claim based on counsel's failure to object to that same error"); Commonwealth v. Costa, 407 Mass. 216, 224

n.9 (1990) ("Because we determine that there was sufficient evidence to support a conviction of murder in the first degree . . . , we hold that trial counsel's failure to move for a required finding of not guilty did not amount to ineffective assistance of counsel").

5.  Review under G. L. c. 278, § 33E.  After reviewing the entire record pursuant to our obligation under G. L. c. 278, § 33E, we decline to enter a verdict of a lesser degree of guilt or to order a new trial.

Judgments affirmed.