LOWY, J.
**633 *727 The defendant was convicted of murder in the first degree on theories of deliberate premeditation and felony-murder in the strangulation death of the victim.[1] The defendant filed a motion for a new trial, arguing that his trial counsel's performance was constitutionally ineffective, particularly counsel's treatment of deoxyribonucleic acid (DNA) evidence presented by the Commonwealth. The motion for a new trial and subsequent motion for reconsideration were denied. On appeal, the defendant raises the same ineffective assistance of counsel claims, raises for the first time a challenge that certain testimony should have been excluded as hearsay, and alternatively asks us to exercise our power under G. L. c. 278, § 33E, to reduce his conviction from murder in the first degree to murder in the second degree. We affirm.
Background. 1. Facts. We recite the essential facts, reserving some additional facts for later discussion. The victim, his older brother, and their mother lived together in an apartment in Somerville. The victim spent the evening of November 22, 2009, playing video games with his brother. The victim had two video game consoles: an Xbox 360 (Xbox), which he kept in the living room, and a PlayStation 3 (PlayStation), which he kept in his bedroom. The victim and his brother were using the Xbox in the living room when their mother returned from work at approximately 6 P.M. She went to sleep shortly thereafter. The brothers continued using the Xbox until approximately 8:30 P.M. , and at around 9:30 P.M. , the victim's brother took a taxicab to a friend's house.
The victim's brother returned to the victim's and their mother's apartment on the morning of November 23, but his knocks on the door went unanswered. When his mother woke up at approximately noon, she found the victim dead on the floor with cords wrapped around his neck and a bag over his head.
A police officer unwrapped the cords from the victim's neck and realized that he was dead. A search of the apartment revealed several video game cartridges, but neither the Xbox nor the PlayStation **634 were found.[2] The victim's cause of death was asphyxia by ligature strangulation.
The defendant had grown up in the same neighborhood as the victim, and the two were acquaintances. The defendant and his girlfriend, Kelly Murray, were each drug users, and after the victim had been found dead the defendant agreed to speak with police. On the night of November 22, the defendant's drug dealer, Durevil Admiral, was not answering the defendant's calls from either Murray's cell phone, which they shared, or a "landline" telephone. The defendant went to the victim's apartment between 11:30 P.M. and midnight to use the victim's telephone to contact Admiral, in hopes that Admiral would not recognize the incoming telephone number and answer the call. The defendant told police that he stayed at the victim's apartment for approximately one hour, and that the victim's Xbox was in the living room when he left. Telephone records admitted in evidence at trial indicated that 101 calls had been made from the victim's telephone to a cell phone number used by Admiral between 11:42 P.M. on *728 November 22 and 1:09 A.M. on November 23. Records further indicated that Admiral had received numerous calls from a telephone that belonged to Murray earlier in the night on November 22, and that Murray's cell phone also was used to make several calls to Amery Gesse, who also sold drugs to the defendant.
Murray testified that she had smoked "crack" cocaine with the defendant on November 22 and went to sleep at some point before midnight. The defendant was still awake when Murray went to sleep. When she woke up at approximately 6:30 A.M. , the defendant was in the apartment and a video game system was in his mother's bedroom. Murray thought it was a PlayStation but was "not a hundred percent sure." The system had not been there the night before. As Murray left the apartment to bring her daughter to school that morning, she saw Gesse in the hallway. When Murray returned to the apartment, the defendant "was coming off of being high," and the video game console she had seen for the first time that morning was gone.
Both Admiral and Gesse also testified. Admiral recalled that the defendant had called him several times at around the time of the victim's death and had offered to sell him a popular game that could be played with "an Xbox or a PlayStation," but he could not recall which console. Gesse testified that the defendant contacted **635 him offering a PlayStation, and that Gesse bought it from him for fifty dollars. The PlayStation was missing a power cord. According to records from Sony Computer Entertainment America LLC (Sony),[3] a PlayStation was activated on December 16, 2009, with Gesse's e-mail address and Internet protocol (IP) address.
Manual Leal, an acquaintance of the defendant's and Murray's, testified to an incident that took place when he was with the defendant in 2011. After overhearing the defendant argue with Murray on his cell phone, Leal saw a text message sent by Murray to the defendant saying that the defendant "was going down" and that "he was a murderer."[4] The defendant then "got a little emotional" and, when Leal asked what that text message was about, told him that "he fucked up," "that he killed Chris," that "[h]e strangled him with a cord" and had broken into the victim's apartment and stolen a video game console. Several months later, Leal relayed this conversation to the Somerville police department, which to that point had had little success investigating the victim's death.
The jury also heard expert testimony from a supervisor in the DNA unit at the State police crime laboratory. DNA testing was conducted on several samples from the crime scene, including the cords used to strangle the victim, a wallet, fingernail clippings, and two microphones from video game headsets. The laboratory had DNA samples from the victim, the defendant, the victim's mother, the victim's brother, and the police officer who had removed the cords from around the victim's neck. Two DNA profiles were found both on the cords wrapped around the victim's neck and on one of the microphones -- a major profile matching the victim's DNA, and a second of inconclusive origin. The second microphone had a major profile matching the victim's DNA and a second profile *729 from which the defendant's DNA was excluded. The fingernail clippings matched the victim's DNA, while the victim's mother's wallet and purse each contained a mixture of DNA samples, none of which was conclusive. Defense counsel did not mention the DNA evidence in his closing argument, although the Commonwealth emphasized that because the second DNA sample found on the cords was inconclusive, "we can't tell you whether or not it's [the defendant]." **636 Finally, the jury heard conversations between Murray and the defendant, recorded while the defendant was in jail, in which the defendant attempted to help Murray avoid speaking to the police.
2. Motion for a new trial. After the defendant had been convicted, he filed a motion for a new trial asserting that his trial counsel was ineffective for failing to (1) sufficiently investigate the DNA evidence or retain a DNA expert; (2) move to exclude the Commonwealth's inconclusive DNA evidence; (3) adequately undercut inconsistencies in the Commonwealth expert's testimony on cross-examination; and (4) emphasize that the Commonwealth did not prove that the PlayStation that Gesse activated was the same PlayStation that was stolen from the victim's apartment. The motion judge, who was also the trial judge, denied the defendant's request for an evidentiary hearing on his motion. A DNA expert reviewed the DNA report on which the Commonwealth's expert had relied and provided an affidavit in which he opined that the defendant's DNA should have been excluded as a possible contributor to the second DNA sample found on the cords. The DNA expert also stated in his affidavit that the interpretation process utilized by the Commonwealth's expert was inconsistent with the protocols that were in place at the time at the State police crime laboratory.
Trial counsel submitted an affidavit in which he discussed receiving the State police crime laboratory's report that the DNA on the cords was inconclusive. Trial counsel indicated that, after reviewing those results, he "thought an inconclusive result was good. I did not consider retaining a DNA expert to review the evidence, moving to exclude the inconclusive results, objecting to the evidence when it was presented, or eliciting in cross-examination of the Commonwealth's expert that [the defendant] has alleles[5 ] at at least six locations that were not present on the cords."
In denying the motion, the judge concluded that defense counsel's failure to investigate the DNA evidence through his own expert did not prejudice the defendant because the inconclusive DNA evidence was not a significant part of the Commonwealth's **637 case, and therefore any testimony from a defense expert was unlikely to have had any effect on the jury's conclusion. She further held that, because the defense suggested the possibility that the defendant would pursue a Bowden defense in his opening statement and through cross-examination, the evidence was relevant and any motion to exclude it would have been denied. She further concluded that even if its admission had been erroneous, the inconclusive nature of the evidence did not prejudice the defendant and did not create a substantial risk of a miscarriage of justice. She found no error in defense *730 counsel's failure to more aggressively cross-examine the Commonwealth's DNA expert and held that, even if it were error, the inconclusive results were of such inconsequential evidentiary value that the manner in which they were admitted could not give rise to a substantial risk of a miscarriage of justice. Finally, the judge held that defense counsel's failure to argue the lack of direct connection between the PlayStation stolen from the victim and the one sold to Gesse was not likely to have influenced the jury's decision, where counsel "strenuously" argued that the Commonwealth had not shown that the PlayStation the Gesse had was the one stolen from the victim.
Discussion. In this consolidated appeal, the defendant raises the same ineffective assistance of counsel arguments raised at his motion for a new trial, asserting that the denial of that motion was an abuse of discretion. He further contends that the admission of testimony regarding Murray's text message calling the defendant a murderer created a substantial likelihood of a miscarriage of justice because it should have been excluded as hearsay or accompanied by a limiting instruction. Finally, the defendant asks us to exercise our power under G. L. c. 278, § 33E, to reduce his conviction to murder in the second degree. Having concluded that any purported error does not require reversal and that relief pursuant to § 33E is not appropriate here, we affirm.
1. Text message. We first address the defendant's contention that Leal's testimony[6] concerning the text message sent by Murray to the defendant, in which she referred to him as a murderer, was inadmissible hearsay, and that its unobjected-to admission created a substantial likelihood of a miscarriage of justice. There **638 was no error.
Absent an exception or exemption to the rule against hearsay, out-of-court statements cannot be offered in evidence for the truth of the matter asserted in the statements. However, some "accusatory statements shed their hearsay character when they are offered not for the truth of the matter asserted, but to provide context for admissible statements of the defendant." Commonwealth v. Bonnett, 472 Mass. 827, 838 n.13, 37 N.E.3d 1064 (2015). That is the case here. The text message provided necessary context to Leal's testimony regarding the defendant's confession that he had murdered the victim. The defendant's statements to Leal were properly admitted against the defendant as a statement by a party opponent. See Commonwealth v. Marshall, 434 Mass. 358, 365, 749 N.E.2d 147 (2001) ; Mass. G. Evid. § 801(d)(2)(A) (2019). Absent testimony regarding the text message, the jury would have been left to consider a confession made by the defendant to an acquaintance without any context as to how or why the conversation began. See Bonnett, supra.[7]
2. DNA evidence. We next consider to the defendant's ineffective assistance of counsel claims. Because the defendant was convicted of murder in the first degree, we review "for a substantial likelihood of a miscarriage of justice by asking whether there was error and, if so, whether the error 'was likely to have influenced *731 the jury's conclusion.' " Commonwealth v. Copeland, 481 Mass. 255, 266, 114 N.E.3d 569 (2019), quoting Commonwealth v. Alicea, 464 Mass. 837, 845, 985 N.E.2d 1197 (2013). "[W]e consider a defendant's claim even if the action by trial counsel does not constitute conduct 'falling measurably below that ... of an ordinary fallible lawyer.' " Commonwealth v. Gonzalez, 443 Mass. 799, 808-809, 824 N.E.2d 843 (2005), quoting Commonwealth v. MacKenzie, 413 Mass. 498, 517, 597 N.E.2d 1037 (1992). Where, as here, the trial judge also considered the motion for a new trial, we extend "special deference" to the judge's action on the motion. Commonwealth v. Grace, 397 Mass. 303, 307, 491 N.E.2d 246 (1986).
As he did in his motion, the defendant maintains that defense counsel's treatment of the DNA evidence constituted ineffective assistance of counsel because he failed to retain an independent DNA expert, object to the admission of the Commonwealth's DNA testimony, and effectively cross-examine that expert. We agree with the motion judge that none of the defendant's claims of error require a new trial.
**639 In limited circumstances, we have recognized as relevant DNA evidence termed "inconclusive." "We use[ ] the term 'inconclusive' to refer to results that provide no information whatsoever due to insufficient sample material, contamination, or some other problem." Commonwealth v. Mattei, 455 Mass. 840, 853, 920 N.E.2d 845 (2010). In particular, inconclusive DNA results have been considered admissible where the defense calls into question the integrity of the police investigation. Commonwealth v. Mathews, 450 Mass. 858, 872, 882 N.E.2d 833 (2008). Although the defendant did not request a Bowden jury instruction, see Commonwealth v. Bowden, 379 Mass. 472, 485-486, 399 N.E.2d 482 (1980) (defendant may present evidence suggesting the police investigation was inadequate), he suggested in his opening statement that there was something amiss in the passage of nearly four years between the murder and the defendant's indictment, which rendered the inconclusive DNA results relevant to this case. See Mathews, supra at 872 n.15, 882 N.E.2d 833, quoting Commonwealth v. Talbot, 444 Mass. 586, 589 n.2, 830 N.E.2d 177 (2005) ("Generally, a trial judge is accorded 'substantial discretion in deciding whether evidence is relevant' ").
We conclude, as did the motion judge, that the inconclusive DNA evidence was properly admitted here. Because of our conclusion, the failure to object to its admission did not prejudice the defendant and could not have created a substantial likelihood of a miscarriage of justice. See Commonwealth v. Woollam, 478 Mass. 493, 498, 87 N.E.3d 64 (2017), cert. denied, --- U.S. ----, 138 S. Ct. 1579, 200 L.Ed.2d 766 (2018) (counsel's failure to object to admission of evidence did not create "a substantial likelihood of a miscarriage of justice because the records were admissible"). Furthermore, the lack of consequence from the DNA evidence, coupled with the breadth of additional compelling evidence against the defendant, leads us to conclude that the DNA evidence, regardless of how it was handled, would not have had an impact on the jury's verdict.
The defendant admitted to having been in the victim's apartment between the time he was last seen alive and when his body was discovered, a fact corroborated by the victim's telephone records. The defendant's girlfriend discovered a video game console in their apartment the morning after the murder that had not been there the night before, and that was no longer there after she saw Gesse leaving the apartment the following morning. Gesse said he bought a PlayStation that was missing a power cord from the defendant the morning after the *732 murder, and Admiral testified that the defendant also offered to sell him a popular video game. Leal **640 testified that he saw a text message in which Murray called the defendant a murderer, which upset the defendant; Leal also testified that when he inquired, the defendant confessed to murdering the victim. Finally, on a recorded telephone call from jail, the defendant and Murray discussed ways that she could avoid cooperating with police if questioned.
In addition to this strong circumstantial evidence, the jury also heard about the inconclusive results of the testing of the defendant's DNA against the second DNA sample found on the cords used to kill the victim. Therefore, any supposed failure in cross-examining the Commonwealth's expert, or in engaging in a "battle of the experts" about whether testing of the defendant's DNA against the second sample found on the cords yielded inconclusive results or excluded the defendant, would not have been so significant as to influence the jury's verdict. See Field, 477 Mass. at 556-561, 79 N.E.3d 1037. There was no substantial likelihood of a miscarriage of justice.
3. Closing argument. The defendant contends that trial counsel's failure to address the lack of evidence that the PlayStation that the defendant sold to Gesse was the same PlayStation that had disappeared from the victim's apartment constituted ineffective assistance of counsel. Specifically, he contends that trial counsel should have argued that Sony's records of the PlayStation that Gesse activated on his IP address did not directly match Gesse's PlayStation to the victim's PlayStation.
However, as the judge pointed out in her written decision on the defendant's motion, trial counsel did argue that the Commonwealth failed to prove that Gesse's PlayStation was the same as the victim's PlayStation, focusing on inconsistencies in testimony: "I'm not even sure they proved that it's the same PlayStation, given that it was silver and the one that he sold to Mr. Gesse was black." Although the argument about Sony's records might have marginally bolstered trial counsel's closing argument as a whole, "suggesting ways in which counsel's closing argument might have been stronger does not make out a claim of ineffective assistance." Commonwealth v. Denis, 442 Mass. 617, 628, 814 N.E.2d 1080 (2004). Trial counsel focused in closing argument on undermining the credibility of Leal's testimony and his credibility as a witness in general because it was Leal who focused the investigation on the defendant. Counsel also offered a third-party culprit defense because there was evidence that the lock to the victim's building was broken, and argued that even if the defendant had **641 the PlayStation, it did not prove that the defendant killed the victim for it. "With hindsight, one can always craft a more eloquent and forceful closing argument." Id. at 627, 814 N.E.2d 1080. Here, trial counsel's closing argument brought to bear what evidence the defendant had in his favor in the face of considerable circumstantial evidence.
4. Review pursuant to G. L. c. 278, § 33E. Finally, the defendant asks us to exercise our authority under G. L. c. 278, § 33E, to reduce his conviction to murder in the second degree. "It is our statutory duty 'to consider broadly the whole case on the law and the facts to determine whether the verdict is consonant with justice.' " Commonwealth v. Salazar, 481 Mass. 105, 118-119, 112 N.E.3d 781 (2018), quoting Commonwealth v. Vargas, 475 Mass. 338, 363-364, 57 N.E.3d 920 (2016).
Although our thorough review of the record did not present any errors that *733 would prompt us to reduce the defendant's conviction, we note an error in the presentation of the DNA evidence by the Commonwealth's expert. In describing the inconclusive results for the second DNA sample on the cords used to strangle the defendant, the expert stated that, because of "the number of places where there's potential drop-out, the minor profile was inconclusive for comparison with other individuals." Dropout refers to "when alleles from the ... DNA donors fail to appear in the DNA profile, a result frequently caused by the failure of the ... testing to detect an allele because of the small size of the sample." United States v. Morgan, 53 F. Supp. 3d 732, 737 (S.D.N.Y. 2014).
Inconclusive DNA results, as detailed supra, ultimately provide the jury with no information. See Mattei, 455 Mass. at 853, 920 N.E.2d 845. This differs from "nonexclusion" DNA results, which "could suggest to the jury that a 'link would be more firmly established if only more [sample] were available for testing.' " Commonwealth v. Cameron, 473 Mass. 100, 106, 39 N.E.3d 723 (2015), quoting Commonwealth v. Nesbitt, 452 Mass. 236, 254, 892 N.E.2d 299 (2008). The Commonwealth expert's testimony that the second DNA profile found on the cords was inconclusive because of dropout suggests that, had there been a more complete DNA profile, it could have matched the defendant's DNA. This was error. Testimony regarding inconclusive DNA results must be presented in a manner that makes clear to the jury that the testing yielded no relevant results and that the individual tested against the sample neither matched the sample nor was excluded from a possible match. We set forth **642 a model jury instruction in the margin.[8]
However, due to the strength of the evidence presented against the defendant, the Commonwealth's proper argument in closing regarding the inconclusive DNA evidence, and the DNA evidence's relatively low import to the case as a whole, this error does not undermine the jury's verdict. Accordingly, we affirm the verdicts and decline to exercise our power under G. L. c. 278, § 33E.
Judgments affirmed.
Order denying motion for a new trial affirmed.

The defendant also was convicted of armed robbery, G. L. c. 265, § 17, and was acquitted of witness intimidation, G. L. c. 268, § 13B.

A dusty Xbox console was found under the couch.

A PlayStation video game console is a Sony-brand product.

Murray testified that she had referred to the defendant as a murderer in text messages, but that she had no knowledge that he had murdered anyone and referred to him as a murderer to make him angry.

We have defined alleles thusly: "A single DNA molecule contains approximately three billion rungs, or base pairs. Certain types of human genes that are called 'polymorphic' can occur in alternate forms (that is, with differing sequences of base pairs), each of which is capable of occupying a gene's position on the DNA ladder. These alternate forms of genes are called 'alleles,' and are highly variable from one person to another." Commonwealth v. Curnin, 409 Mass. 218, 228, 565 N.E.2d 440 (1991) (Appendix).

The defendant also asserts error in testimony of a detective recounting Leal's statement to police. This testimony is cumulative of both Leal's and Murray's testimony and could not independently give rise to a substantial likelihood of a miscarriage of justice. See Commonwealth v. Barbosa, 463 Mass. 116, 127, 972 N.E.2d 987 (2012).

Murray testified that she sent such text messages to the defendant, but stated that she did so just to make him angry.

"In this case, you heard expert testimony about inconclusive DNA testing.
"Where DNA results are deemed inconclusive, the results provide no information whatsoever as to the source of the DNA. Therefore, inconclusive results may not be considered for any identification purpose. Inconclusive DNA results may be considered only if there is a suggestion that the Commonwealth failed to adequately investigate the crime."