NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-366

COMMONWEALTH

vs.

SCOTT RATHBUN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this case, the defendant was found, after a jury trial, to be a sexually dangerous person.  See G. L. c. 123A, § 12.  He has now appealed.

The defendant argues first that the Commonwealth's evidence was insufficient to support a finding that the defendant suffered from a personality disorder as defined in the civil commitment statute.  A "[p]ersonality disorder" is defined by the statute as "a congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses."  G. L. c. 123A, § 1.  As the defendant correctly notes, the government must prove through "expert testimony from at least one of [the] two designated qualified

examiners,"[1] Chapman, petitioner, 482 Mass. 293, 309 (2019), that the defendant's condition results, at the very least, in serious difficulty in controlling his sexual impulses.  See id.; Dutil, petitioner, 437 Mass. 9, 17-18 (2002).

At least one of the qualified examiners, however, Dr. Greg Belle, gave testimony that was adequate to support the jury's finding on this point.  He testified, "And so in [the defendant's] case, he has shown a repeated pattern of engaging in sex offending behaviors with three individuals . . . between the years of 2002 and 2015.  So again, I also think that that not only speaks clinically to his antisocial personality disorder, but also to his inability to control his sexual impulses while he's been in the community."

The defendant argues that the evidence is inadequate despite the quoted language because on cross-examination, Dr. Belle conceded that there was no evidence defendant had any issues relative to sexual self-regulation since 2015, a time

---

[1] A qualified examiner is "a physician who is licensed pursuant to section two of chapter one hundred and twelve who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine, inclusive, of chapter one hundred and twelve; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction."  G. L. c. 123A, § 1.

2

period that includes fifteen months where the defendant was in the community while on probation. But a period of time during which no sex offenses occurred while the defendant was in the community is not inconsistent with a conclusion that an individual has a general inability to control his sexual impulses. See Souza, petitioner, 87 Mass. App. Ct. 162, 168-169, 171-172 (2015) (directed verdict for petitioner improper even where petitioner's most recent offense had occurred over twenty years ago and where there was no evidence of sexual misconduct during years petitioner had lived in the community).

The defendant also argues that the jury's conclusion on the question of general inability to control sexual impulses cannot stand in light of Dr. Belle's agreement that the defendant had controlled his sexual impulses while incarcerated, first in prison for roughly one year, then again for roughly four months after his probation was revoked, and then in the treatment center for nearly two years. But controlling oneself in the pervasively supervised environment of a prison or the treatment center does not necessarily preclude a conclusion that an individual has a general inability to control his sexual impulses. Hill, petitioner, 422 Mass. 147, 157, cert. denied, 519 U.S. 867 (1996) (noting that, since recent examples of "conduct showing sexual dangerousness" are often lacking when petitioner is "in a secure environment" that prevents his

dangerous disposition from manifesting, Commonwealth was free to attempt to prove its case by extrapolating present dangerousness from earlier incidents of the type of dangerousness that "has a tendency to persist").  Of course, the pervasive supervision in such facilities does not prevent all sex offenders from committing sexual crimes while incarcerated, but it does not follow that all incarcerated individuals with a general inability to control their sexual impulses do.  This is not altered by the fact on which the defendant would rely that he was incarcerated with adult men, a category that includes all his victims.

Thus, there was sufficient evidence to support the jury's finding.

The defendant also alleges a number of prosecutorial errors that, he argues, give rise to a substantial risk of a miscarriage of justice.  R.B., petitioner, 479 Mass. 712, 713 (2018) (concluding that in sexually dangerous person cases, "as in criminal cases, [unpreserved] arguments are to be reviewed for a substantial risk of a miscarriage of justice").

In the opening, the prosecutor asserted that on more than one occasion the defendant had anally raped his eighty year old victim, when the evidence showed that he had instead held the victim's mouth open so that he could ejaculate into it.  This was obviously incorrect, although there is no evidence in the

4

record that it was intentional.  In any event, given the detailed accurate testimony heard by the jury, we do not think the error created a substantial risk of a miscarriage of justice.

The defendant also points to the prosecutor describing the findings that must be made by the jury not as elements they must find, but as boxes they have to check.  Given that the jury must find beyond a reasonable doubt each of the elements, it is possible that this box-checking idea might mislead a jury into thinking the burden is lower than it actually is.  The defendant argues that this was reinforced by the prosecutor's statement, "The question is whether or not based upon all the evidence you hear that whether or not you think it would be likely that [defendant] will sexually reoffend again."  Of course, the jury must conclude beyond a reasonable doubt that, "as a result of [his] . . . personality disorder, he is likely to commit further sexual offenses if not confined to a secure facility," not merely think that.  Commonwealth v. Husband, 82 Mass. App. Ct. 1, 3-4 (2012).

Nonetheless, even if these statements taken together might have confused a juror -- something we need not and do not decide -- given the jury instructions, we do not think they would have created a substantial risk of a miscarriage of justice.

5

Defense counsel objected and the judge agreed that the statement in closing was wrong that the test used by one of the defendant's experts -- the so-called MATS-1 test -- was "not even accepted in the Commonwealth of Massachusetts." Counsel did not ask for a curative instruction. Because that may have been a tactical decision, we cannot determine on this record if there was even an error.

Of more concern than the opening or closing were two questions asked on cross-examination that were obviously improper and that, despite not being evidence, certainly put before the jury the prosecutor's characterizations of the defendant's witnesses themselves.

The first witness was the founder of an organization called the Boston Release Network, which assists recently released sex offenders. He is himself a former sex offender and a prior resident of the treatment center; after appealing his original conviction, he received a new trial where he was convicted of lesser offenses. The prosecutor ended her cross-examination by asking about the sex offenses committed by the witness. Her questioning follows:

"Q: So before that last offense, you had raped two women and sexually assaulted another?

"A: Yes.

"Q: And --

6

"A: In 1979 and '80.

"Q: Do you feel remorse for the women that you raped?

"A: Oh, I certainly do.

"Q: Do you feel that going back to trial and putting your victim through that a second time was showing remorse?

"A: Not in that context perhaps, but it didn't change my remorse. It was a legal right that I had to appeal a conviction.

"Q: But you put that woman through a second trial?"

The defendant's counsel objected and the objection was sustained.

The final question, apparently designed to impugn the character of the witness, was obviously improper, see Commonwealth v. Kozec, 399 Mass. 514, 525 (1987); Commonwealth v. McCoy, 59 Mass. App. Ct. 284, 289-290 (2003), and the judge properly sustained the objection. Although it therefore did not result in any testimony, it certainly did serve to put before the jury the idea that the witness needlessly forced his own victim to go through a second trial after the witness's successful appeal.

In cross-examination of Dr. Leonard Bard, a forensic psychologist who was previously employed at the Massachusetts Treatment Center and as a qualified examiner, the prosecutor concluded her cross-examination as follows:

"Q: . . . Dr. Bard, you're a hired gun for defense counsel, aren't you?

"MR. PALMUCCI:  Objection, Your Honor.

"THE COURT:  Sustained.

"MS. MULLIN:  Nothing further."

Referring to a defense expert as a "hired gun" has been condemned by appellate courts in Massachusetts for over forty years.  There are repeated decisions, from this court and the Supreme Judicial Court, urging the Commonwealth to refrain from this improper practice.  See, e.g., Commonwealth v. Copeland, 481 Mass. 255, 264 (2019); Commonwealth v. Grimshaw, 412 Mass. 505, 511 (1992); Commonwealth v. O'Brien, 377 Mass. 772, 778 (1979).  This question, therefore, was also clearly improper. The objection was sustained, so no testimony was given on the point, but, through the question, the prosecutor disparaged the witness in front of the jury.

The practice of including in cross-examination clearly improper questions to which an objection will certainly be sustained, but which disparage the witness, is a serious matter, and we remind all attorneys that it is improper.  Depending on the circumstances, it could in some cases properly lead to declaration of a mistrial.

In this case, however, given the strength of the evidence, these errors in cross-examination, even when taken together and combined with the errors we have found in the opening and

closing, did not create a substantial risk of a miscarriage of justice.

The defendant argues that evidence that he would be required, if released, to register as a sex offender improperly was excluded.  The record before us does not reveal whether the defendant attempted to introduce such evidence.  Without a clearer record on the point, the defendant cannot demonstrate reversible error.

The judgment is affirmed.

<u>Judgment affirmed</u>.

By the Court (Rubin, Desmond & Singh, JJ.[2]),

*Paul Little*

Clerk

Entered: February 4, 2025.

---

[2] The panelists are listed in order of seniority.